STATE OF NEBRASKA, APPELLEE, V.
ROGER DALE BJORKLUND, APPELLANT.
604 N.W.2d 169

Filed January 7, 2000. Nos. S-94-856, S-94-994.

438

Dennis R. Keefe, Lancaster County Public Defender, Scott P. Helvie, and Richard L. Goos, and Alan G. Stoler, Steven E. Tennies, and Jerry M. Hug for appellant.

Roger D. Bjorklund, pro se.

Don Stenberg, Attorney General, and J. Kirk Brown, and Gary E. Lacey, Lancaster County Attorney, and John A. Colborn for appellee.

CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and IRWIN, Chief Judge, and SIEVERS, Judge.

PER CURIAM.

## I. NATURE OF CASE

Roger Dale Bjorklund, in two consolidated actions, appeals his convictions of and sentencing for murder in the first degree and use of a weapon to commit a felony. We affirm.

## II. BACKGROUND

On September 22, 1992, 18-year-old Candice Harms, a freshman at the University of Nebraska-Lincoln, disappeared after leaving her boyfriend's house at approximately 11:40 p.m. The next day, Harms' abandoned vehicle was found north of Lincoln. The police found nothing at the scene of the vehicle to indicate what had happened to Harms, and although police launched a search for Harms, they could not locate her.

In December 1992, Scott A. Barney and Bjorklund were arrested for possession of a stolen vehicle. While in custody, Barney told police that he and Bjorklund had kidnapped, raped,

and murdered Harms. Barney then took law enforcement officials to the locations where Barney and Bjorklund had left Harms' vehicle, where they had assaulted her, and where they had murdered Harms and buried her body.

While in jail on the pending stolen vehicle charge, Bjorklund requested to speak with Det. Gregory H. Sorensen. When Sorensen arrived at the jail, Bjorklund confirmed that he still wanted to talk to Sorensen. Sorensen read Bjorklund his *Miranda* rights, and Bjorklund responded affirmatively to each question on the standard *Miranda* form.

In the statement he gave Sorensen, Bjorklund stated that he and Barney had planned a bank robbery; however, they were certain that they were going to be caught and so they decided, prior to the robbery, to fulfill their fantasy of abducting and raping a woman. Bjorklund stated that on September 22, 1992, after he and Barney had driven around for quite some time looking for a suitable victim, they saw Harms turn onto Vine Street at the 27th Street intersection in Lincoln. They followed Harms to her parents' home on 61st and Vine Streets where Bjorklund then approached Harms as she exited her vehicle in her parents' driveway and forced her back into her car. Bjorklund and Harms in Harms' car then followed Barney in Barney's car to a 27th Street and Bluff Road location where they abandoned Harms' car, bound her hands, wrapped her head with duct tape, and then placed her in Barney's car.

Bjorklund said that they then took Harms to 84th and Havelock Streets in Lincoln. At this location, Barney left Bjorklund and Harms to go fill his car with gas. While Barney was gone, Bjorklund sexually assaulted Harms. When Barney returned, Bjorklund observed Barney also sexually assault Harms.

Following the assault, Bjorklund stated that Harms was placed back into Barney's car and taken to 134th Street and Yankee Hill Road in Lincoln. There, Bjorklund removed Harms from the car, placed her in a choke hold to control her, and began walking with her out into the field. At this point, Bjorklund stated that he stumbled and fell on top of Harms and that Barney shot Harms twice in the head with a .380-caliber semi-automatic pistol immediately thereafter.

According to Bjorklund's statement, Bjorklund and Barney then left Harms lying in the field and drove away, returning when they realized that they had left behind their blanket. When Bjorklund located the blanket near Harms, he heard Harms still spasming or gasping for air. Bjorklund then fired five rounds from his .38-caliber revolver at Harms and left the scene.

Bjorklund stated that he and Barney then took the blanket and Harms' clothing and personal belongings back to the site of the assault and burned those items there. They threw the weapons and extra ammunition into Pawnee Lake and 2 days later went back and buried Harms' body in a shallow grave a short distance from where they shot her.

An autopsy determined that the cause of Harms' death was manual strangulation and multiple gunshot wounds to the head. The coroner's physician also determined that the various incisions on Harms' body, including the removal of the nipple of her left breast, were consistent with sexual sadism and torture.

In February 1993, an amended information was filed charging Bjorklund in count I with murder in the first degree under Neb. Rev. Stat. § 28-303 (Reissue 1995) and in count II with use of a weapon to commit a felony under Neb. Rev. Stat. § 28-1205(1) (Reissue 1989). Count I alleged that Bjorklund, on or about September 22, 1992, killed Harms purposely and with deliberate and premeditated malice; or killed her in the perpetration of a first degree sexual assault or a kidnapping. Count II alleged that, on that same date, Bjorklund used a deadly weapon to commit a felony. At his arraignment, Bjorklund stood mute, and the trial court entered pleas of not guilty on his behalf.

Thereafter, numerous motions and other matters were heard by the trial court, including a lengthy suppression hearing involving the December 1992 statement and various other self-incriminating statements made by Bjorklund to Sorensen and other law enforcement personnel.

In October 1993, after a motion for change of venue, a jury was selected in Sidney, Cheyenne County, Nebraska. Twelve jurors and four alternates were sworn and impaneled on October 21. Trial began in Lincoln on October 25, and on November 17, the jury returned a unanimous verdict, finding Bjorklund guilty on both counts.

Prior to sentencing, on November 23, 1993, Bjorklund filed his first motion for new trial, which was overruled on December 13. Bjorklund subsequently filed a second motion for new trial on March 21, 1994, pertaining to information disclosed by the trial judge, Donald E. Endacott, to counsel after the trial. The information concerned an ex parte contact between Judge Endacott and the jury in Sidney. Judge Endacott overruled the second motion for new trial on March 23. The State filed a motion to reopen the hearing on Bjorklund's second motion for new trial, which was granted. Bjorklund also filed a "Motion for Disqualification/Motion to Recuse," and Judge Endacott assigned the issue of the ex parte contact presented in the second motion for new trial to Judge Paul D. Merritt.

The hearing was held before Judge Merritt in Sidney in May 1994. Judge Merritt found that while in Sidney and following the selection of the 12 jurors, Judge Endacott, in the presence of Bjorklund and all counsel, informed the jurors that he would be joining them in the jury room to make a few brief comments. In the jury room, Judge Endacott took care of several housekeeping matters and then asked those jurors who wished to join hands and bow their heads to do so. Judge Endacott then said, "God be with us" or words to that effect; his voice cracked; and he left the jury room. When the four alternates were chosen, the same thing occurred, except that Judge Endacott apparently also hugged some or all four of the alternate jurors.

Judge Merritt found that Bjorklund had not waived his right to complain about this action by Judge Endacott and had timely filed his second motion for new trial. Judge Merritt then found that Judge Endacott's actions were inappropriate and that " 'misconduct involving an improper communication between a nonjuror and a juror gives rise to a rebuttable presumption of prejudice which the State has the burden to overcome.' " Although Judge Endacott refused to testify, Judge Merritt found that his testimony was unnecessary because the relevant question was whether Bjorklund's right to a fair and impartial trial was prejudiced by Judge Endacott's actions, and Judge Endacott's reasons for acting as he did had no bearing on that question. Judge Merritt found that the State established beyond a reasonable doubt that the ex parte contact by Judge Endacott was made prior to opening statements, the presentation of any evidence,

and the commencement of deliberations and was therefore harmless. Judge Merritt stated:

> The prayers were very short in nature and were not interpreted by the jurors as being comments by Judge Endacott on the evidence to be presented in the case or on how the case should be decided. From the time the twelve jurors were selected and sworn up to the time the case was submitted to the jurors for their deliberation, Judge Endacott continued to remind the jurors of their duty to keep open minds and base their verdict only on the evidence presented.

Sentencing was ultimately reset for September 20, 1994. On September 9, Bjorklund appealed the denial of his motion for new trial (case No. S-94-856) and filed a motion to stay sentencing until that appeal was decided. Judge Endacott denied this motion to stay. After discussing individually the statutory aggravating and mitigating factors and stating in his order that he had considered all nonstatutory mitigating evidence, Judge Endacott sentenced Bjorklund to death. In May 1996, we deferred ruling on case No. S-94-856 and consolidated that case with case No. S-94-994, Bjorklund's timely filed direct appeal.

In the brief in the direct appeal, case No. S-94-994, under "Cumulative Error," Bjorklund has raised the ex parte judicial contact, and therefore, the assignments of error issues of case No. S-94-856 are incorporated in the appeal docketed as case No. S-94-994.

### III. ASSIGNMENTS OF ERROR AND STANDARD OF REVIEW

Due to the large number of assignments of error presented to this court and the variety of standards of review which apply to those assigned errors, we will specifically list and address the assignments of error and applicable standards of review within each categorical heading set forth below.

### IV. ANALYSIS

#### 1. JURISDICTION

In his first assignment of error, Bjorklund argues that the trial court lacked jurisdiction to sentence him when an appeal from

the overruling of his second motion for new trial had been perfected to this court prior to sentencing. We disagree.

Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 1994) states in pertinent part:

[T]he proceedings to obtain a reversal, vacation, or modification of judgments and decrees rendered or final orders made by the district court, including judgments and sentences upon convictions for felonies . . . shall be by filing . . . within thirty days after the rendition of such judgment . . . a notice of intention to prosecute such appeal . . . .

On November 23, 1993, Bjorklund filed a motion for new trial. This motion was heard on December 13 and overruled the same day. Bjorklund filed a second motion for new trial on March 21, 1994, after discovering the ex parte contact between Judge Endacott and the jury at the time of trial. The second motion for new trial dealt with this ex parte contact. This motion was heard by Judge Endacott on March 23, 1994, and overruled the same day. On April 14, the State filed a motion to reopen the hearing on Bjorklund's second motion for new trial (ex parte contact), which motion was granted on April 18, and Judge Merritt was assigned to hear this reopened motion. Judge Merritt overruled this motion on September 1, and Bjorklund appealed the denial of the second motion for new trial, which is docketed as case No. S-94-856. Bjorklund was then sentenced to death by Judge Endacott on September 20, and Bjorklund filed a direct appeal, which is docketed as case No. S-94-994.

■ The first task we have is to determine whether or not we have jurisdiction to hear the appeal docketed as case No. S-94-856. The motion for new trial and the notice of appeal were filed prior to sentencing. We held in *State v. Spotted Elk*, 227 Neb. 869, 420 N.W.2d 707 (1988), that in a criminal case, the judgment date is the date on which the defendant is sentenced.

■ The three types of final orders which may be reviewed on appeal under the provisions of Neb. Rev. Stat. § 25-1902 (Reissue 1995) are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a sub-

stantial right made on summary application in an action after a judgment is rendered. *State v. Jacques,* 253 Neb. 247, 570 N.W.2d 331 (1997); *State v. Gibbs,* 253 Neb. 241, 570 N.W.2d 326 (1997). It is clear that in the instant case, the overruling of Bjorklund's motion for new trial neither determined the action and prevented a judgment nor was made on summary application after judgment was rendered. Consequently, we must determine if the trial court's order affected a substantial right in the context of a special proceeding.

A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing. *State v. Jacques, supra.* In the instant case, it is apparent that such a standard is not met. The claims advanced in Bjorklund's motion for new trial may be addressed and disposed of on appeal after the sentencing. This is illustrated by the fact that the issues presented by Bjorklund's motion in this case have been presented for review in his postjudgment appeal.

As Bjorklund suffered no prejudice from the overruling of his motion for new trial that could not be effectively mitigated by a timely appeal taken after the final judgment, we determine that no substantial right of Bjorklund was affected by the overruling of his motion for new trial. Such overruling was not a final, appealable order, and Bjorklund's notice of appeal was premature. Bjorklund's appeal in case No. S-94-856 must be dismissed.

In *Holste v. Burlington Northern RR. Co.,* 256 Neb. 713, 592 N.W.2d 894 (1999), we held that a notice of appeal from a nonappealable order does not render void for lack of jurisdiction the acts of the trial court taken in the interim between the filing of the notice of appeal and the dismissal of the appeal by the appellate court. We stated in *Holste v. Burlington Northern RR. Co.,* 256 Neb. at 729, 592 N.W.2d at 906:

> "[A]ny other rule would be utterly unthinkable. Any party would then be able, at any time before final judgment, to bring the trial of a case to an abrupt halt by merely filing an order for appeal from any ruling of the court. Control of the judicial process would thus pass from the courts to the

> parties and their counsel. Mistrials and continuances would be available without limitation at the whim of any party. The trial court must have, and does have, the power to determine whether its jurisdiction to proceed has been ousted. Should any abuse of that power ever arise, such abuse could undoubtedly be corrected by prompt appellate action."

Quoting *Smiley v. Atkinson*, 12 Md. App. 543, 280 A.2d 277 (1971).

Therefore, under the holding of *Holste v. Burlington Northern RR. Co., supra,* the trial court retained jurisdiction to sentence Bjorklund even though a premature appeal had been filed.

We conclude that Bjorklund's assignment of error claiming that the trial court lacked jurisdiction to sentence him when an appeal from the overruling of Bjorklund's second motion for new trial had been perfected prior to the sentencing is without merit.

## 2. Dismissal of Felony Murder Count

### (a) Assignment of Error

Bjorklund assigns as his only error in this section that the trial court erred in failing to dismiss those portions of count I of the information that charged Bjorklund with felony murder.

### (b) Standard of Review

The alleged unconstitutionality of a statute presents a question of law which must be determined by an appellate court independently from the conclusion reached by a trial court. *State v. McKee,* 253 Neb. 100, 568 N.W.2d 559 (1997); *State v. Sommerfeld,* 251 Neb. 876, 560 N.W.2d 420 (1997). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Ponderosa Ridge LLC v. Banner County,* 250 Neb. 944, 554 N.W.2d 151 (1996).

### (c) Analysis

In this assignment of error, Bjorklund argues essentially that the felony murder statute, § 28-303(2), is unconstitutional in that it deprives him of the right to lesser-included offense

instructions, does not require an intent to kill or mens rea element, permits one to be punished for a killing when the only intent he or she had was to commit the underlying felony, and creates a conclusive and nonrebuttable presumption of transferred intent that eases the State's burden of proof and evidentiary responsibilities. We reject each of these arguments.

### (i) Lesser-Included Offenses

We have repeatedly held that Nebraska law provides no lesser-included homicide offenses to felony murder. See, e.g., *State v. Price*, 252 Neb. 365, 562 N.W.2d 340 (1997); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994). We recently noted that the U.S. Constitution does not require that the jury in a felony murder case be instructed as to lesser-included offenses where the crime, as defined by state law, does not include any lesser offenses. *State v. Moore*, 256 Neb. 553, 591 N.W.2d 86 (1999), *cert. denied Knight v. Florida*, 528 U.S. 990, 120 S. Ct. 459, 145 L. Ed. 2d 370, citing *Hopkins v. Reeves*, 524 U.S. 88, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998), *rehearing denied* 524 U.S. 968, 119 S. Ct. 5, 141 L. Ed. 2d 766.

Bjorklund claims that this absence of lesser-included offenses is somehow intrinsically violative of his constitutional rights. In *Hopkins v. Reeves*, 524 U.S. at 96-97, however, the U.S. Supreme Court stated that "[a]lmost all States, including Nebraska, provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime. . . . We have never suggested that the Constitution requires anything more." The Supreme Court concluded that a defendant is not, under Nebraska's felony murder law, constitutionally entitled to a lesser-included offense instruction in a capital case. *Id.* This determination is dispositive in the present case. Consequently, Bjorklund's argument is without merit.

### (ii) Intent to Kill

Bjorklund charges that § 28-303(2) is unconstitutional in that it does not require the State to prove an intent to kill and permits one to be punished for a killing where the only intent proved was to commit the underlying felony.

Bjorklund's arguments are hardly unique. We have repeatedly rejected such constitutional claims in the past. See, *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483 (1986), *cert. denied* 481 U.S. 1042, 107 S. Ct. 1987, 95 L. Ed. 2d 826 (1987); *State v. Perkins*, 219 Neb. 491, 364 N.W.2d 20 (1985); *State v. Bradley*, 210 Neb. 882, 317 N.W.2d 99 (1982). "[T]he constitutionality of felony murder statutes is well settled, and 'that states have authority to make aiders and abettors equally responsible, as a matter of law, with principals, or to enact felony-murder statutes is beyond constitutional challenge.'" *Perkins v. Grammer*, 838 F.2d 294, 295 (8th Cir.) (1988), *cert. denied* 487 U.S. 1220, 108 S. Ct. 2876, 101 L. Ed. 2d 911, quoting *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978).

In the context of capital felony murder, the U.S. Supreme Court has said that

> some nonintentional murderers may be among the most dangerous and inhumane of all—the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property. This reckless indifference to the value of human life may be every bit as shocking to the moral sense as an "intent to kill." Indeed it is for this very reason that the common law and modern criminal codes alike have classified behavior such as occurred in this case along with intentional murders. See, *e. g.*, G. Fletcher, Rethinking Criminal Law § 6.5, pp. 447-448 (1978) ("[I]n the common law, intentional killing is not the only basis for establishing the most egregious form of criminal homicide . . . . For example, the Model Penal Code treats reckless killing, 'manifesting extreme indifference to the value of human life,' as equivalent to purposeful and knowing killing").

*Tison v. Arizona*, 481 U.S. 137, 157, 107 S. Ct. 1676, 95 L. Ed. 2d 127 (1987), *rehearing denied* 482 U.S. 921, 107 S. Ct. 3201, 96 L. Ed. 2d 688.

We agree with the Supreme Court's analysis and reaffirm our prior holding that the U.S. Constitution does not require that

the crime of felony murder include a specific intent to kill. Bjorklund's argument is without merit.

### (iii) Transferred Intent

Bjorklund argues that the presumption of transferred intent, inherent in felony murder, is unconstitutional in that it eases the State's burden of proof and evidentiary responsibilities. This argument, however, is premised on a misunderstanding of felony murder and, in reality, presents little more than a recharacterization of the "intent to kill" argument we have previously rejected.

The critical difference between felony murder and premeditated first degree murder is that the underlying felony takes the place of the intent to kill, or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intent required for the underlying felony. See *State v. Price*, 252 Neb. 365, 562 N.W.2d 340 (1997). The U.S. Supreme Court has noted:

> At common law, murder was defined as the unlawful killing of another human being with "malice afore-thought." The intent to kill and the intent to commit a felony were alternative aspects of the single concept of "malice aforethought." See 3 J. Stephen, History of the Criminal Law of England 21-22 (1883). Although American jurisdictions have modified the common law by legislation classifying murder by degrees, the resulting statutes have in most cases retained premeditated murder and some form of felony murder (invariably including murder committed in perpetrating or attempting to perpetrate a robbery) as alternative means of satisfying the mental state that first-degree murder presupposes.

*Schad v. Arizona*, 501 U.S. 624, 640-41, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991), *rehearing denied* 501 U.S. 1277, 112 S. Ct. 28, 115 L. Ed. 2d 1109. The Supreme Court in that case concluded:

> Whether or not everyone would agree that the mental state that precipitates death in the course of robbery is the moral equivalent of premeditation, it is clear that such equivalence could reasonably be found, which is enough to rule out the argument that this moral disparity bars treating

them as alternative means to satisfy the mental element of a single offense.

501 U.S. at 644.

█ The effect of transferred intent, then, is not to lessen the burden of the prosecution, but simply to alter what the prosecution must prove. Instead of proving an intent to kill, the State must prove the defendant's intent with respect to the underlying felony. Consequently, Bjorklund's constitutional challenge fails on its premise, and his assignment of error is without merit.

### 3. CONFLICT OF INTEREST

#### (a) Assignments of Error

On appeal, Bjorklund alleges that the trial court erred in not conducting (1) an evidentiary hearing to address the validity of Bjorklund's claims of a conflict of interest between the public defender's office and the county attorney's office and (2) hearings regarding Bjorklund's dissatisfaction with appointed counsel, thus violating his rights under the 6th, 8th, and 14th Amendments to the U.S. Constitution.

#### (b) Standard of Review

█ When a defendant becomes dissatisfied with court-appointed counsel, unless the defendant can show good cause to the court for the removal of counsel, his or her only alternative is to proceed pro se if competent to do so. *State v. McPhail*, 228 Neb. 117, 421 N.W.2d 443 (1988). The right of an indigent defendant to have counsel does not give the defendant the right to be represented by counsel of his or her own choosing, and mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel. *Id.*

#### (c) Analysis

In his first assignment of error in this section, Bjorklund argues that the trial court erred in failing to conduct hearings to address the validity of Bjorklund's claims of a conflict of interest between the public defender's office and the county attorney's office. We conclude this assignment of error to be without merit.

On April 26, 1993, Bjorklund filed a motion to proceed pro se. During the hearing on that motion, the trial court asked

Bjorklund, "[w]hat are the reasons that you wish to represent yourself and wish to have the Public Defender withdraw?" Bjorklund stated that he was able to defend himself and that he noted a lack of aggressiveness in his case. He also stated that although he was "quite impressed" with his court-appointed attorney's capabilities, he sometimes

> felt that, perhaps, there was a conflict of interest between the — the County Attorney's Office and the Public Defender's Office, due to the fact that they are both county agencies and the fact that the County Attorney's Office is usually looked at as the superior office of the two offices.

As evidence of the conflict of interest alleged, Bjorklund stated that he was aware that members of the two offices sometimes had "off-the-cuff" meetings and that "when [he] had a problem at the Lancaster County Jail or when [he] needed to have something really done, it took the intervention of the prosecutor's office when [his own attorney] was not able to take care" of the problem. Both the public defender and the county attorney stated at that hearing there was no conflict of interest between their two offices.

In June 1993, a hearing was held on Bjorklund's motion to appoint counsel or to restore former counsel. In his motion, Bjorklund requested either the appointment of someone outside the public defender's office or "IF NOT THAT then restore his former counsel." On June 18, 1993, the court reappointed the public defender's office after a lengthy hearing in which Bjorklund presented his concerns about proceeding pro se as a jailed litigant and in which the State presented evidence rebutting Bjorklund's allegations.

Bjorklund argues in this assignment of error that the trial court erred in failing to conduct an evidentiary hearing to address the validity of Bjorklund's complaints regarding an alleged conflict of interest between the county attorney's office and the public defender's office. The simple fact of the matter is that the trial court did hold a hearing in which the trial court questioned Bjorklund's reasons for wanting to proceed pro se and in which Bjorklund discussed at length his bases for alleging the conflict of interest.

■ We have repeatedly stated that a conflict of interest denotes a situation in which regard for one duty tends to lead to disregard of another; a conflict of interest places a defense attorney in a situation inherently conducive to divided loyalties. *State v. Whitmore*, 238 Neb. 125, 469 N.W.2d 527 (1991). See, also, *State v. Marchese*, 245 Neb. 975, 515 N.W.2d 670 (1994). It is clear from the record made at the hearing on the motion to proceed pro se that no real conflict of interest existed in this case and that such a claim was patently frivolous. No separate hearing regarding the alleged conflict of interest, beyond the hearing on the motion to proceed pro se, was required in this case because this is a situation in which "there is clearly no possibility of antagonistic defenses" and in which there was no conflict of interest. *State v. Marchese*, 245 Neb. at 979, 515 N.W.2d at 673. Given that the trial court did hold a hearing in which it was adduced that there was no conflict of interest between the county attorney's office and the public defender's office, we conclude that this assignment of error is without merit.

In his second assignment of error in this section, Bjorklund argues that the trial court erred in failing to conduct hearings regarding Bjorklund's dissatisfaction with appointed counsel, thus violating his rights under the 6th, 8th, and 14th Amendments to the U.S. Constitution. We disagree.

Bjorklund argues that during the course of the criminal proceedings, he brought to the trial court's attention that he was unhappy with his appointed counsel's representation, that he had filed a bar complaint against his counsel, and that he had asked that other counsel be appointed. As a result, Bjorklund claims that the hearings should have been held to further investigate this matter or that the trial court should have appointed different counsel.

■ We have stated that when counsel is court-appointed, the defendant does not have a constitutional right to counsel of his or her choice. *State v. Schlund*, 249 Neb. 173, 542 N.W.2d 421 (1996). Bjorklund stated to the trial court at the hearing on his motion to proceed pro se that he had always been quite impressed with his counsel's capabilities and that it was "not that [Bjorklund felt] that [his appointed counsel was] lacking in any way as an attorney." There is nothing in this record to

demonstrate that the trial court should have held an additional evidentiary hearing on the issue of Bjorklund's dissatisfaction with his appointed counsel, beyond the hearing held on the motion to proceed pro se. The record demonstrates that Bjorklund himself told the trial court that he was proceeding pro se because he felt that he was able to intelligently defend himself, that he wanted to represent himself and not have to worry about any alleged conflict of interest, and that he was satisfied with his appointed counsel's performance. The record also demonstrates that at the motion to appoint counsel or restore former counsel, Bjorklund asked for either counsel outside the public defender's office or the reinstatement of his former counsel. Bjorklund does not have a constitutional right to appointment of counsel of his own choosing. Once Bjorklund determined that he no longer wished to proceed pro se, the trial court could, and did, properly appoint Bjorklund's former counsel.

We have also repeatedly held that a criminal defendant's mere distrust of, or dissatisfaction with, his or her attorney is not a sufficient reason to require appointment of substitute counsel. *State v. Bustos*, 230 Neb. 524, 432 N.W.2d 241 (1988). See, also, *In re Interest of N.M. and J.M.*, 240 Neb. 690, 484 N.W.2d 77 (1992). Bjorklund did indeed file complaints with the bar association regarding his appointed counsel. The complaints involved his counsel's inability to change Bjorklund's segregated housing status, his counsel's unwillingness to file a motion that his counsel apparently deemed to be frivolous, and the policy of the public defender's office of not corresponding with clients through the mail. The bar complaints at issue are simply an expression of Bjorklund's dissatisfaction with his appointed counsel. Interestingly enough, as noted above, Bjorklund himself told the trial court after filing these complaints that although he wished to proceed pro se, he was not dissatisfied with his counsel's performance. Dissatisfaction that subsequently dissipates is not a sufficient reason to appoint substitute counsel and is certainly not a sufficient reason to require the trial court to conduct further hearings into Bjorklund's "dissatisfaction" with his appointed counsel. Bjorklund's assignment of error in this regard is without merit.

### 4. JURY SELECTION AND SEQUESTRATION

#### (a) Assignments of Error

On appeal, Bjorklund alleges that the trial court also erred in (1) failing to declare Neb. Rev. Stat. § 29-2006 (Reissue 1995) unconstitutional; (2) failing to conduct a hearing pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), concerning the State's removal of venireperson C.H. from the panel; (3) failing to grant Bjorklund's challenge for cause to venirepersons D.F., M.M., C.W., M.H., E.W., and K.L.; (4) allowing the clerk of the Cheyenne County District Court to dismiss venireperson E.B. in violation of Neb. Rev. Stat. § 25-1601(2) (Reissue 1995); and (5) failing to order complete sequestration of the jury during the trial and so abusing its discretion.

#### (b) Standard of Review

The alleged unconstitutionality of a statute presents a question of law which must be determined by an appellate court independently from the conclusion reached by a trial court. *State v. McKee*, 253 Neb. 100, 568 N.W.2d 559 (1997); *State v. Sommerfeld*, 251 Neb. 876, 560 N.W.2d 420 (1997). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996).

The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court and is subject to reversal only when clearly wrong. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999).

Whether a jury is to be kept together before submission of the cause in a criminal trial is left to the discretion of the trial court. *Id.* To warrant reversal, denial of a motion to sequester the jury before submission of the cause must be shown to have prejudiced the defendant. *Id.*

#### (c) Analysis

##### (i) Constitutionality

In his first assignment of error in this section, Bjorklund alleges that the trial court erred in failing to declare § 29-2006

unconstitutional. Bjorklund limits his argument to subsection (3) of § 29-2006, and we will likewise limit our discussion and disposition of his claim. Specifically, Bjorklund argues that this provision violates his rights under the 6th and 14th Amendments to the U.S. Constitution and his rights under article I, §§ 3, 6, and 11, of the Nebraska Constitution. We disagree.

Section 29-2006(3) states that "in indictments for an offense the punishment whereof is capital, [a juror's statement] that his opinions are such as to preclude him from finding the accused guilty of an offense punishable with death" constitutes good cause to challenge the juror. We have previously held in *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993), and *State v. Peery*, 223 Neb. 556, 391 N.W.2d 566 (1986), that § 29-2006(3) does not violate either the 6th or the 14th Amendment to the U.S. Constitution. Bjorklund has presented no new arguments with relation to this federal constitutional claim, and we affirm our previous holdings in this regard.

Bjorklund also argues that § 29-2006(3) violates the impartial jury and due process provisions of the Nebraska Constitution found in article I, §§ 3, 6, and 11. In *State v. Peery, supra*, we held that § 29-2006(3) does not violate article I, § 3, and we affirm that holding in this case.

With regard to Bjorklund's claims relating to article I, §§ 6 and 11, we have also stated:

> While it was up to the court to determine the appropriate sentence in the event of a finding of guilt, the State, like [the defendant], was entitled to a jury which would be impartial regardless of the potential punishment to be imposed. It is entirely permissible to exclude from jury service venirepersons whose views on capital punishment are such as to prevent or substantially impair their ability to impartially apply the law to the evidence.

*State v. Bradley*, 236 Neb. 371, 387, 461 N.W.2d 524, 537 (1990). Section 29-2006(3) allows a juror to be successfully challenged for cause on the basis of his or her opinions regarding the death penalty *only* in those cases in which those opinions would prevent the juror from impartially weighing the evidence and reaching a conclusion as to the defendant's guilt or innocence on the basis of the evidence presented. As such,

§ 29-2006(3) fully comports with the state constitutional provisions regarding impartial juries and due process found in article I, §§ 6 and 11. Because we conclude that § 29-2006(3) does not violate Bjorklund's rights under the 6th and 14th Amendments to the U.S. Constitution or under article I, §§ 3, 6, and 11, of the Nebraska Constitution, we conclude this assignment of error to be without merit.

### (ii) Selection

In his second assignment of error in this section, Bjorklund argues that the trial court erred in not conducting a *Batson* hearing concerning the State's removal of venireperson C.H. from the panel. We do not agree.

The U.S. Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), forbids race-related discrimination in the use of peremptory challenges and has been extended only to gender-related discrimination in *J. E. B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). In the instant case, Judge Endacott explained to venireperson C.H. that there were two possibilities for first degree murder in regard to sentencing: life imprisonment and the death penalty. Judge Endacott further explained that if the jury convicted Bjorklund, the jury had nothing whatsoever to do with the punishment and must not consider punishment in arriving at a verdict as to whether Bjorklund is guilty. Judge Endacott then asked venireperson C.H. if he had any reservations, feelings, or convictions about the death penalty which would prevent or substantially impair his ability to make an impartial decision as to Bjorklund's guilt, and venireperson C.H. replied "[i]t wouldn't be established in that way, but I would feel guilty after the fact if he was sentenced to the death penalty, to myself, I would. It wouldn't make any difference in my decision, but I would feel guilty afterward." The State's challenge for cause was overruled, and the State later used one of its peremptory challenges to remove venireperson C.H. Bjorklund argues that the trial court should have conducted a *Batson* hearing pursuant to his request at that point, because "people opposed to capital punishment represent a segment of society, much like a minority or a male-female; and that striking

[venireperson C.H.] is a violation of Batson." Brief for appellant at 114.

▇▇▇ Both this court and the U.S. Supreme Court have previously stated that death penalty opponents' who testify that they can put aside their views and base their decision solely on the evidence are not a distinct or cognizable group whose successful peremptory challenge and removal from the jury is impermissible. *State v. Burchett*, 224 Neb. 444, 399 N.W.2d 258 (1986) (citing *Lockhart v. McCree*, 476 U.S. 162, 106 S. Ct. 1758, 90 L. Ed. 2d 137 (1986)). We reaffirm our holding in *State v. Burchett, supra*, and decline to extend the race and gender limitations of *Batson v. Kentucky, supra*, to include situations such as the one presented here. This assignment of error is also without merit.

In his third assignment of error, Bjorklund alleges that the trial court erred in failing to grant Bjorklund's challenges for cause to venirepersons D.F., M.M., C.W., M.H., E.W., and K.L. We disagree.

During voir dire, venireperson D.F. testified that he had previously expressed the opinion that Bjorklund should be charged as a murderer. However, after the court and counsel explained to venireperson D.F. that a person is not guilty until he is proven guilty beyond a reasonable doubt, venireperson D.F. testified that he could be a fair and impartial juror in the case.

In the jury questionnaire, venireperson M.M. stated, "I assume the defendant . . . is guilty since he was the one that was arrested." However, venireperson M.M. stated during voir dire that she now understood that Bjorklund was presumed innocent until proven guilty, that she could put aside her own feelings and follow the judge's instructions, and that she could be a fair and impartial juror.

Venireperson C.W. stated during voir dire that he believed that, as a general rule, people are not punished severely enough. However, venireperson C.W. later stated that despite this opinion, he could still be a fair and impartial juror.

Venireperson M.H. indicated in her jury questionnaire that she thought Bjorklund was guilty because his friend "snitched him off." However, venireperson M.H. stated during voir dire that she could be a fair and impartial juror because she now

understood that she must base her decision on the evidence and nothing else.

Venireperson E.W. stated that she had conversed about the case with her son and his friend, both of whom were Lincoln residents, and that she believed, after these conversations, that Bjorklund was guilty. However, during voir dire, venireperson E.W. stated that she could set aside what her son and his friend had said and that she could be a fair and impartial juror.

Venireperson K.L. stated that her husband was the Cheyenne County Attorney and that she had answered the telephone when the Lancaster County Attorney prosecuting Bjorklund had contacted her husband in his official capacity upon arriving in Cheyenne County for jury selection. However, venireperson K.L. also stated that she could decide the case based solely on the evidence and that she could be a fair and impartial juror.

The trial court overruled Bjorklund's challenges for cause as to each of these venirepersons. Section 29-2006(2) states that where a juror has expressed or formed an opinion as to the guilt or innocence of the person charged in a case and where the juror upon examination "shall say on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that such juror . . . is impartial and will render such verdict, may, in its discretion, admit such juror . . . to serve in such case." Additionally, the law does not require that a juror be totally ignorant of the facts and issues involved; it is sufficient if the juror can lay aside his or her impressions or opinions and render a verdict based on evidence presented in court. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999). A juror who has indicated an inability to fairly and impartially determine guilt by refusing to subordinate his or her own personal views must be excused for cause. *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995).

Here, the record clearly demonstrates that each of these jurors could lay aside his or her impressions or opinions and base a verdict solely on the evidence and facts presented at trial. The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court and is subject to reversal only when clearly wrong. *State v. Lotter, supra.* We conclude that the

trial court was not clearly wrong in failing to grant Bjorklund's challenges for cause to each of these venirepersons. This assignment of error is without merit.

In his fourth assignment of error, Bjorklund alleges that the trial court erred in allowing the clerk of the Cheyenne County District Court to dismiss venireperson E.B. in violation of § 25-1601(2). We disagree.

Section 25-1601(2) states, "The district court or any judge thereof may exercise the power of excusing any grand or petit juror or any person summoned for grand or petit jury service upon a showing of undue hardship, extreme inconvenience, or public necessity for such period as the court deems necessary." Here, the record indicates that the clerk of the Cheyenne County District Court spoke with venireperson E.B. and informed her that she was excused from jury duty due to her recent hospital stay. Bjorklund alleges that this act violated § 25-1601(2). However, the record demonstrates that the clerk spoke to venireperson E.B. and excused her at the judge's behest. The statute in question does not require that the judge speak personally with a venireperson seeking excusal from service, but only that the trial court officially excuse venireperson E.B. The statute was not violated in this case because the judge did officially excuse venireperson E.B. This assignment of error is without merit.

### (iii) Sequestration

In his last assignment of error in this section, Bjorklund argues that the trial court abused its discretion in failing to order complete sequestration of the jury during the trial. Again, we disagree.

In the instant case, the jurors stayed together at a hotel in Lincoln during the trial and were prohibited from reading or listening to any news accounts concerning the trial. However, the jurors were not required to eat together, were allowed to return to Sidney on the weekends, and could freely travel around Lincoln during the week.

Whether a jury is to be kept together before submission of the cause in a criminal trial is left to the discretion of the trial court. *State v. Lotter, supra.* To warrant reversal, denial of a motion to

sequester the jury before submission of the cause must be shown to have prejudiced the defendant. *Id.* Here, the record clearly demonstrates that the trial court did not abuse its discretion in refusing to order complete sequestration of the jury prior to deliberations. The trial judge repeatedly admonished the jurors to avoid discussing the case among themselves or with anyone else, not to read or listen to news reports about the case, and not to form or express any opinions about the case.

During the trial, several of the jurors received letters which threatened the jurors' families in the event that the jury did not find Bjorklund guilty. Several of the jurors did open the threatening letters and at least one of those jurors read the letter. In a tape-recorded statement taken by the Lincoln Police Department on November 22, 1993, Bjorklund admitted that he, together with others, was the source of these threatening letters and that he gave them to a minister to mail to the Cornhusker Hotel, where the jury was staying. Bjorklund then moved for a mistrial. At the hearing on that motion, each juror testified that the letters would not influence their ability to be fair and impartial and that they could still render a verdict based solely on the evidence presented at trial.

 Bjorklund, by initiating these threatening letters, is now estopped from claiming that these letters entitle him to a new trial. When the defendant causes jury misconduct, he or she cannot thereafter be heard to maintain that the conduct was prejudicial. *State v. Bonaparte*, 222 Neb. 469, 384 N.W.2d 304 (1986).

For these reasons, we conclude that this assignment of error is also without merit.

### 5. EVIDENTIARY RULINGS

#### (a) Assignments of Error

On appeal, Bjorklund alleges that the trial court erred in (1) failing to grant Bjorklund's motions to suppress statements given to law enforcement personnel on December 6, 1992, and on May 25, June 5, and November 22, 1993, and in so doing violated his rights under the 4th, 5th, 6th, 8th, and 14th Amendments to the U.S. Constitution and article I, §§ 1, 3, 7, 11, and 12, of the Nebraska Constitution; (2) admitting highly

prejudicial and cumulative photographs, slides, and videotapes into evidence; and (3) failing to grant Bjorklund's motion for mistrial after the prosecutor used evidence not approved prior to trial, thus violating Bjorklund's rights under the 5th, 8th, and 14th Amendments to the U.S. Constitution and article I, §§ 1, 3, 9, 15, and 26, of the Nebraska Constitution.

### (b) Standard of Review

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes that the trial court is the finder of fact and takes into consideration that it observed the witnesses. *State v. Strohl*, 255 Neb. 918, 587 N.W.2d 675 (1999); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996).

The admission of photographs of a gruesome nature rests largely within the discretion of the trial court, which must determine the relevancy and weigh their probative value against their prejudicial effect. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996).

The decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998). Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995); *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990).

### (c) Analysis

#### *(i) Motions to Suppress*

In his first assignment of error in this section, Bjorklund alleges that the trial court erred in failing to grant his motions to suppress statements given to law enforcement personnel on December 6, 1992, and on May 25, June 5, and November 22, 1993, and in so doing violated Bjorklund's 4th, 5th, 6th, 8th, and

14th Amendment rights under the U.S. Constitution as well as his rights under article I, §§ 1, 3, 7, 11, and 12, of the Nebraska Constitution. We disagree.

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Strohl, supra; State v. Konfrst, supra.* In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Strohl, supra; State v. Konfrst, supra.*

A district court's finding and determination that a defendant's statement was voluntarily made will not be set aside on appeal unless this determination is clearly erroneous. *State v. Martin,* 243 Neb. 368, 500 N.W.2d 512 (1993).

An accused may waive his or her Fifth Amendment rights to be assisted by counsel during custodial interrogation and against self-incrimination provided that waiver is made voluntarily, knowingly, and intelligently. *Moran v. Burbine,* 475 U.S. 412, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986); *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *State v. Dean,* 246 Neb. 869, 523 N.W.2d 681 (1994), *overruled on other grounds, State v. Burlison,* 255 Neb. 190, 583 N.W.2d 31 (1998). Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the accused has waived the Fifth Amendment right to counsel. *Moran v. Burbine, supra; Miranda v. Arizona, supra; State v. Dean, supra.*

A waiver of the Sixth Amendment right to counsel is valid only when it reflects an intentional relinquishment or abandonment of a known right or privilege. *Johnson v. Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *State v. Dean, supra. Miranda* warnings which adequately inform a defendant of his or her Fifth Amendment rights are also adequate to inform a defendant of his or her Sixth Amendment rights. *Patterson v. Illinois,* 487 U.S. 285, 108 S. Ct. 2389, 101

L. Ed. 2d 261 (1988); *State v. Dean, supra.* A waiver of counsel which is effective under the federal Constitution is sufficient to waive the right to counsel under the Nebraska Constitution. *State v. Dean, supra.*

In the instant case, Bjorklund argues that the trial court should have suppressed four statements given by him to law enforcement officials. Specifically, Bjorklund argues that prior to giving his statements to law enforcement officials, he did not receive proper *Miranda* warnings; that the statements should not have been taken because he had invoked his right to counsel on December 2, 1992; that several of his statements were surreptitiously recorded and therefore were invalid; and that he was induced into confessing to these crimes by offers of cigarettes and soda pop.

Regarding the December 6, 1992, statement, the trial court found beyond a reasonable doubt that the contact was initiated by Bjorklund; Bjorklund was advised of his *Miranda* rights and freely, voluntarily, and intelligently waived those rights; Bjorklund freely, voluntarily, and intelligently waived his privilege against self-incrimination and his right to counsel prior to making such statements; Bjorklund's statements were not procured or induced, directly or indirectly, by promises, and were not obtained as a result of force, fear, oppression, or coercion; and the statements were not tainted in any way by previous statements made by Bjorklund to law enforcement officials. The trial court then overruled the motion to suppress the December 6 statement.

As to Bjorklund's statements on May 25 and June 5, 1993, the trial court found beyond a reasonable doubt that at the time of those statements, Bjorklund was representing himself and had validly waived his right to court-appointed counsel; the statements were initiated by Bjorklund; Bjorklund was clearly and unequivocally advised of his *Miranda* rights prior to giving the statements at issue; Bjorklund freely, voluntarily, and intelligently waived his privilege against self-incrimination and his right to counsel; Bjorklund freely, voluntarily, and intelligently made these statements; Bjorklund's statements were not procured or induced, directly or indirectly, by promises and were not obtained as a result of force, fear, oppression, or coercion;

and the statements were not tainted in any way by previous statements made by Bjorklund to law enforcement officials. The trial court then overruled the motions to suppress the May 25 and June 5 statements.

On November 22, 1993, following the trial in this matter, Bjorklund again gave a statement to law enforcement officials and subsequently moved to suppress that statement. After a hearing, the trial court overruled the motion. In so doing, the trial court found beyond a reasonable doubt that Bjorklund's statement was freely, voluntarily, and intelligently made by him; the statement was not procured or induced, directly or indirectly, by persons in authority or by force, fear, oppression, or coercion; Bjorklund was clearly and unequivocally advised and warned of his *Miranda* rights; and he voluntarily, knowingly, and intelligently waived his privilege against self-incrimination and right to counsel.

Here, the evidence is such that the trial court could reasonably conclude that Bjorklund initiated the interviews with law enforcement officials which resulted in the statements at issue, that Bjorklund was given the *Miranda* warnings, and that at no time during these statements did Bjorklund request counsel. There being no evidence of coercion or force in obtaining the statements, under the totality of the circumstances, it cannot be said that the trial court's findings or its overruling of the motions to suppress were clearly erroneous. Thus, this assignment of error is without merit.

### (ii) Photographs

In his second assignment of error in this section, Bjorklund alleges that the trial court erred in admitting into evidence highly prejudicial and cumulative photographs, slides, and videotapes. Specifically, Bjorklund argues that the probative value of the videotapes, photographs, and slides of the crime scene, the excavation of the body, and the autopsy was outweighed by the prejudicial effect created as a result of the gruesomeness of many of the depictions. We disagree.

The admission of photographs of a gruesome nature rests largely within the discretion of the trial court, which must determine the relevancy and weigh their probative value against

their prejudicial effect. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996). If a photograph illustrates or makes clear some controverted issue in a homicide case, a proper foundation having been laid, it may be received, even if gruesome. *State v. McBride, supra.* In homicide cases, photographs of the victim, upon proper foundation, may be received in evidence for purposes of identification, to show the condition of the body, to show the nature and extent of wounds or injuries, and to establish malice or intent. *State v. Jackson*, 255 Neb. 68, 582 N.W.2d 317 (1998); *State v. McBride, supra.* Admission of videotapes is generally within the trial court's discretion, subject to the same requirements for admission of still photographs. *State v. Rife*, 215 Neb. 132, 337 N.W.2d 724 (1983).

Bjorklund does not challenge the foundation laid for the admission of the photographs, videotapes, and slides. Each of the photographs, videotapes, and slides that were admitted into evidence were relevant to prove the condition of the victim's body, the cause of death, intent and malice, or corroboration of Bjorklund's confessions and statements about the kidnapping, rape, and murder. They were highly relevant to the issues in this case, and although many were indeed gruesome, their probative value was not outweighed by their prejudicial effect. As we have stated previously, " '[g]ruesome crimes produce gruesome photographs.' " *State v. McBride*, 250 Neb. at 661, 550 N.W.2d at 677.

Bjorklund also argues that the photographs, videotapes, and slides were cumulative. Cumulative evidence is that evidence tending to prove the same point of which other evidence has been offered. *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997). The crime scene photographs were offered for materially different reasons (corroboration of Bjorklund's statements, intent, and condition of Harms' body) than were the autopsy slides (expert opinion on the manner and cause of death) or the videotapes (depiction of the scene and real-time portrayal of the excavation and autopsy). Thus, they did not tend to prove the same point and were not cumulative.

The trial court did not abuse its discretion in admitting the photographs, slides, and videotapes. Thus, Bjorklund's assignment of error in this regard is without merit.

### (iii) Motion for Mistrial

In his third assignment of error in this section, Bjorklund argues that the trial court erred in failing to grant his motion for mistrial after the prosecution used evidence not approved prior to trial, thus violating Bjorklund's rights under the 5th, 8th, and 14th Amendments to the U.S. Constitution and his rights under article I, §§ 1, 3, 9, 15, and 26, of the Nebraska Constitution. We disagree.

The decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of that discretion. *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998). A motion for mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991). Egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of other incompetent matters are examples of occurrences which may constitute such events. *State v. Groves, supra.*

In the instant case, Bjorklund argues that the prosecutor's use of charts which were essentially enlargements of the amended information filed in this case amounted to preliminary instructions which were highly prejudicial and inflammatory. Bjorklund also argues that the charts were admitted into evidence despite the fact that they were not approved prior to trial.

However, we conclude that the trial court did not abuse its discretion in allowing the prosecutor to use the charts at issue in his opening statement or in refusing to grant Bjorklund's motion for mistrial. Here, the charts represented the amended information filed in this case and did not constitute any kind of comment on the evidence, prejudicial evidence, or introduction of incompetent matters to the jury. Additionally, while the charts were admitted into evidence, they were admitted solely for the purposes of preserving the record for appeal on the issue of the motion for mistrial. We also note that the allegations of the amended information were discussed with the jury during voir dire in this case.

■ We have stated that one is allowed considerable latitude in making an opening statement. *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990). While we conclude that the prosecutor committed no error in using the charts in the instant case, any harm that might conceivably have occurred as a result of the use of the charts was removed by the repeated statements of defense counsel, the prosecutor, and the trial judge that nothing counsel said during their opening statements was evidence and could not be considered by the jury. Because we determine that the trial court did not abuse its discretion in overruling the motion for mistrial, we conclude that this assignment of error is also without merit.

### 6. PROSECUTORIAL IMPROPRIETIES

#### (a) Assignment of Error

On appeal, Bjorklund alleges that he was deprived of a fair trial due to prosecutorial improprieties in violation of his rights under the 5th, 8th, and 14th Amendments to the U.S. Constitution and article I, §§ 1, 3, 9, 15, and 26, of the Nebraska Constitution.

#### (b) Standard of Review

■ In order for error to be predicated upon misconduct of counsel, it must be so flagrant that neither retraction nor rebuke from the court can entirely destroy its influence. *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993). Before it is necessary to grant a mistrial due to prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995). The conduct of a prosecutor which does not mislead and unduly influence the jury and thereby prejudice the rights of the defendant does not constitute misconduct. *State v. Valdez*, 239 Neb. 453, 476 N.W.2d 814 (1991).

#### (c) Analysis

In this assignment of error, Bjorklund alleges that he was deprived of a fair trial due to prosecutorial improprieties. Specifically, he argues that his rights were violated because the Lancaster County Attorney refused to recuse himself from the case although he was involved in the investigation, because the

prosecution asked fact-specific questions during voir dire, because the prosecutor misstated the law during closing argument, because the prosecutor used charts during his opening statement, and because of the cumulative effect of all these errors. We conclude Bjorklund's arguments are unpersuasive.

At the outset, we note that Bjorklund failed to object to the prosecutor's questions during voir dire or to his comments during closing argument. It is a well-settled principle that one may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error. *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994). Additionally, any objection to a prosecutor's arguments made after the jury has been instructed and has retired is untimely and will not be reviewed on appeal. *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992). We decline to address these arguments as they were not properly presented for our review.

In the instant case, the simple fact is that the county attorney was not called by the prosecution or the defense as a witness. Therefore, he was not required to withdraw himself from prosecution of this case.

Regarding Bjorklund's arguments concerning the prosecutor's use of charts during his opening statement, we addressed this issue above and found that the use of the charts did not prejudice Bjorklund in any way. We decline to address this argument further in this assignment of error. This assignment of error is without merit.

The prosecutor having committed no improprieties, we need not address Bjorklund's cumulative effect assignment of error in this section.

### 7. CONFRONTATION ISSUES

### (a) Assignments of Error

On appeal, Bjorklund alleges that the trial court (1) erred in failing to have him present at all critical stages of his trial and (2) denied him his constitutional right to confrontation by precluding effective cross-examination of Sorensen.

### (b) Standard of Review

A defendant has a constitutionally protected right to be present at all critical stages of his or her trial. *Kentucky v.*

*Stincer*, 482 U.S. 730, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987). The Confrontation Clause applies to every stage of a trial. *Id.*

 Generally, a constitutional question not properly raised in the trial court will not be considered on appeal. *State v. Bainbridge*, 249 Neb. 260, 543 N.W.2d 154 (1996).

 It is within the discretion of the trial court to control and limit cross-examination as necessary to prevent undue prejudice and thus produce a fair trial. *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997).

(c) Analysis

In his first assignment of error in this section, Bjorklund alleges that the trial court erred in failing to have him present at all critical stages of his trial. Specifically, Bjorklund alleges that he was denied his right to confront, cross-examine, and be present during the ex parte contact which occurred between the trial judge and the jurors, when Barney tendered his plea, and at Bjorklund's first motion to recuse the trial judge and stay sentencing. We disagree.

In *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999), Lotter claimed that the prosecutor and the trial court erroneously engaged in an ex parte communication to obtain assurances from the trial court that Nissen, who was also charged with first degree murder arising out of the same facts, would receive a life sentence if he testified against Lotter. We held in that case that while the communication between the trial court and Nissen was ex parte, a criminal defendant does not have standing to assert the illegality of a codefendant's sentencing agreement. Simply put, Bjorklund does not have standing to assign as error in this case that he was not allowed to be present at or to participate in Barney's plea hearing. This assignment of error is without merit.

 Bjorklund also argues that his absence from the hearing on his first motion to recuse Judge Endacott from sentencing was error and violative of his rights to be present and to confrontation. However, we note that Bjorklund's counsel was present at this hearing and never registered any objection regarding Bjorklund's absence. Both this court and the U.S. Supreme Court have noted that a constitutional right may be forfeited in

criminal as well as civil cases by the failure to make a timely assertion before a tribunal having jurisdiction to determine it. *United States v. Gagnon*, 470 U.S. 522, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985) (holding that defendant must assert right of confrontation and right to be present at time of alleged violation and cannot claim those rights for first time on appeal); *State v. One 1985 Mercedes 190D Automobile*, 247 Neb. 335, 526 N.W.2d 657 (1995), *questioned on other grounds, State v. $1,947*, 255 Neb. 290, 583 N.W.2d 611 (1998). Bjorklund has thus failed to preserve this question for our review.

Because we determine that Bjorklund's rights to confrontation and to be present were not implicated with regard to the hearing at which Barney tendered his plea, were not properly raised for our review with regard to the motion for recusal, and were properly disposed of below with regard to the ex parte communication, we conclude this assignment of error to be without merit.

 In his second assignment of error in this section, Bjorklund argues that the trial court denied him his constitutional right to confrontation by precluding effective cross-examination of Sorensen. As we noted above, the functional purpose of the Confrontation Clause is to ensure the integrity of the fact-finding process through the provision of an opportunity for effective cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987). Under the Nebraska rules of evidence, courts limit cross-examination of witnesses to the subject matter of the direct examination and matters affecting the credibility of the witness. Neb. Evid. R. 611(2), Neb. Rev. Stat. § 27-611(2) (Reissue 1995).

Here, the State filed a motion in limine prohibiting any reference to polygraph examinations or to the fact that Bjorklund offered to take a polygraph examination. The trial court granted that motion, and, at trial, defense counsel sought to have the trial court reconsider its ruling and allow him to cross-examine Sorensen regarding Bjorklund's offer to take the polygraph. However, during his exchange with the trial court, defense counsel stated, "The State did question the detective concerning delivering a message to Mr. Bjorklund, [but] did not say what that message was."

█ The scope of cross-examination is necessarily limited by the scope of direct examination. § 27-611. The record is clear, and defense counsel by his own admission stated, that the prosecution did not open the door by mentioning polygraphs or by questioning Sorensen as to the content of the message delivered by him to Bjorklund. The trial court did not abuse its discretion in controlling and limiting cross-examination to the subject matter of direct examination, nor did the trial court infringe upon Bjorklund's right to confront Sorensen regarding all matters to which he testified on direct examination. This assignment of error is also without merit.

## 8. JURY INSTRUCTIONS

### (a) Assignments of Error

Bjorklund next alleges that the trial court erred in failing to (1) instruct the jury on first degree sexual assault, attempted first degree sexual assault, and kidnapping as lesser-included offenses of first degree felony murder and (2) include malice as an essential element of second degree murder.

### (b) Standard of Review

█ A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Becerra*, 253 Neb. 653, 573 N.W.2d 397 (1998); *State v. Howard*, 253 Neb. 523, 571 N.W.2d 308 (1997).

█ Whether jury instructions given by a trial court are correct is a question of law. *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997).

### (c) Analysis

In his first assignment of error in this section, Bjorklund alleges that the trial court erred in failing to instruct the jury on first degree sexual assault, attempted first degree sexual assault, and kidnapping as lesser-included offenses of first degree felony murder. We disagree because the evidence produced no rational

basis for acquitting Bjorklund of the greater offense while convicting him of one of the lesser offenses for which instructions were requested.

As noted above, we have repeatedly indicated that in Nebraska, felony murder contains no lesser-included homicide offenses. See, e.g., *State v. Price*, 252 Neb. 365, 562 N.W.2d 340 (1997); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994); *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986); *State v. Hubbard*, 211 Neb. 531, 319 N.W.2d 116 (1982). Those cases all presented felony murder cases in which the defendant requested an instruction on a lesser homicide offense, and not an instruction relating to the predicate felony.

We have stated that a predicate felony is a lesser-included offense of felony murder for sentencing purposes, such that a defendant cannot be convicted and sentenced for both felony murder and the underlying felony without violating the Double Jeopardy Clause. See, *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997); *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996). However, we have not directly confronted the question of whether a defendant in a felony murder case may be entitled to a lesser-included offense instruction on the underlying felony.

We do not need to decide the question in the instant case because the record in this case provides no basis for the giving of a lesser-included offense instruction. A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998); *State v. Becerra, supra.*

Even assuming that the first prong of this test has been satisfied, it is evident that the second prong has not. In the instant case, it is impossible to rationally conclude that the killing of Harms did not occur in the perpetration of a sexual assault and kidnapping. Consequently, while Bjorklund could certainly have been convicted of sexual assault, attempted sexual assault, or kidnapping, there was no rational basis for convicting Bjorklund

of these offenses and yet acquitting him of the greater offense of felony murder.

Where the prosecution has offered uncontroverted evidence on an element necessary for a conviction of the greater crime but not necessary for the lesser offense, a duty rests on the defendant to offer at least some evidence to dispute this issue if he or she wishes to have the benefit of a lesser-offense instruction. *State v. Parks, supra*; *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994), *questioned on other grounds, State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996). Thus, even assuming that a predicate felony may be a lesser-included offense of felony murder, Bjorklund was not entitled to a lesser-included offense instruction.

Bjorklund also argues that failure to give a lesser-included offense instruction violated the holding of *Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980). This argument is similarly without merit. In *Beck*, the U.S. Supreme Court held that Alabama's failure to afford capital defendants the protection provided by lesser-included offense instructions violated the defendant's due process rights. *Beck* was predicated on the basic rule of law that " 'the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.' " 447 U.S. at 635. The Court thus concluded that

> when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.

447 U.S. at 637.

Such circumstances are not present in the instant case because, as noted above, the record would not permit a rational jury to find Bjorklund guilty of the lesser underlying felonies and acquit him of the greater offense of first degree murder. Consequently, if the jury credited the evidence establishing Bjorklund's guilt of an underlying felony, there could be no rea-

sonable doubt with respect to the element that would justify conviction for felony murder—that the victim was killed in perpetration of the underlying felony.

We also note that Bjorklund was charged with first degree murder under both a felony murder theory and a premeditation theory. Pursuant to the premeditation theory, the jury was instructed that they could find Bjorklund guilty of second degree murder or manslaughter as lesser-included offenses of premeditated first degree murder. The "all-or-nothing" situation contemplated by *Beck v. Alabama, supra*, is simply not present in the instant case. In short, *Beck* does not support Bjorklund's argument. His assignment of error is meritless.

In his second assignment of error in this section, Bjorklund argues that the trial court erred in failing to include malice as an essential element of second degree murder. In light of our holding in *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), such an instruction would also be an incorrect statement of the law because malice is not an element of second degree murder. We conclude this assignment of error to be without merit.

### 9. Sentencing

#### (a) Assignments of Error

Bjorklund alleges, summarized, as follows:

(1) The trial court erred in overruling his motions to exclude death as a possible sentence.

(2) The death penalty should not be imposed when a jury makes no finding that the defendant intended to kill, attempted to kill, or actually did kill the victim; had a major personal involvement in any underlying felony during which the victim was killed; or showed a reckless indifference to human life.

(3) The trial judge erred in failing to recuse himself from sentencing when there was evidence of bias or prejudice and when he initiated and received ex parte communications.

(4) The trial court erred in failing to call a three-judge panel as requested by Bjorklund when there were specific and compelling reasons why a three-judge panel was required.

(5) The trial court erred in failing to make specific, written findings of fact on nonstatutory mitigating circumstances and in

failing to enunciate which nonstatutory mitigating factors were considered.

(6) The trial court erred in failing to conduct a proper proportionality review pursuant to Neb. Rev. Stat. § 29-2521.02 (Reissue 1995).

(7) The trial court erred in imposing the death penalty when that penalty was more excessive than that imposed in factually similar cases, including that of Bjorklund's equally culpable codefendant.

(8) The trial court erred in not conducting a fair comparative review, mandatory under Neb. Rev. Stat. § 29-2522(3) (Reissue 1995).

(9) The trial court erred in allowing the presentence investigation report to be entered into evidence at sentencing.

(10) The trial court erred in allowing victim impact statements which contained advocacy of the type of punishment which should be imposed to be included in the presentence investigation report.

(11) The trial court erred in finding that the evidence offered by the State proved aggravators beyond a reasonable doubt.

(12) The trial court erred in not finding that the statutory and nonstatutory mitigating circumstances approached or exceeded the weight of the aggravating circumstances.

(13) Death by electrocution constitutes cruel and unusual punishment.

(14) Neb. Rev. Stat. § 29-2520 (Reissue 1995) lacks appropriate standards for impaneling a three-judge panel.

(15) Section 29-2520 is unconstitutional because a defendant is denied the right to have a jury determine death eligibility.

(16) Section 29-2521 fails to give the defendant adequate notice of aggravating circumstances.

(17) Neb. Rev. Stat. §§ 29-2521 through 29-2524 (Reissue 1995) are unconstitutional because a sentencing panel is not required to enunciate which nonstatutory mitigating factors were considered and found to exist.

(18) Section 29-2522 provides insufficient guidance as to the manner in which the sentencer should weigh aggravating and mitigating circumstances.

(19) Sections 29-2521.03 and 29-2522(3), as interpreted by *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986), and *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), excessively limit comparative proportionality review and contravene the plain meaning of the statute.

(20) The holdings of this court regarding § 29-2521.03 are unconstitutional and violate the clear mandatory language of the statute.

(21) Section 29-2522(3) deprives a defendant of an accurate and consistent proportionality review.

(22) The manner in which the then applicable version of § 29-2523(1)(a) through (c) utilized the terms "substantial history," "apparent effort," and "especially heinous, atrocious, cruel" was vague and overbroad.

(23) Nebraska's death penalty statutes are not sufficiently principled, have not been consistently followed and enforced by the courts, and are unconstitutionally vague and overbroad.

(b) Standard of Review

■ A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995); *State v. Richter*, 240 Neb. 913, 485 N.W.2d 201 (1992).

■ It is a fundamental principle of statutory construction that penal statutes are to be strictly construed. *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998); *State v. Kennedy*, 251 Neb. 337, 557 N.W.2d 33 (1996). Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by courts below. *State v. Burlison, supra*; *State v. Thieszen*, 252 Neb. 208, 560 N.W.2d 800 (1997).

■ The determination of whether mitigating circumstances approach or exceed the weight of aggravating circumstances is not a numerical process, but, rather, involves the reasoned judg-

ment of the sentencing authority. *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996).

The alleged unconstitutionality of a statute presents a question of law which must be determined by an appellate court independently from the conclusion reached by a trial court. *State v. McKee*, 253 Neb. 100, 568 N.W.2d 559 (1997); *State v. Carpenter*, 250 Neb. 427, 551 N.W.2d 518 (1996). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Andrews v. Schram*, 252 Neb. 298, 562 N.W.2d 50 (1997); *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997).

### (c) Analysis

██ Bjorklund's first assignment of error in this section is that the trial court erred in overruling his motions to exclude death as a possible sentence. Bjorklund failed, however, to argue this assignment in his brief. We have repeatedly stated that absent plain error, assignments of error not discussed in the briefs will not be addressed by an appellate court. *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997); *State v. Thieszen, supra.* We see no reason to alter this rule in the present case and decline to address this assignment of error.

In his second assignment of error, Bjorklund argues that the death penalty should not be imposed when a jury makes no finding that the defendant intended to kill, attempted to kill, or actually did kill the victim; had a major personal involvement in any underlying felony during which the victim was killed; or showed a reckless indifference to human life. We disagree.

Specifically, Bjorklund argues that the jury's failure to make specific findings in its verdict and the subsequent imposition of the death penalty violated the U.S. Supreme Court's holding in *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982). In *Enmund*, the Court struck down the imposition of the death penalty in a case in which the defendant, who drove the getaway car, did not himself kill or intend to kill the victims and was not present at the killings. The Court held that the death penalty violated the 8th and 14th Amendments to the U.S. Constitution when imposed upon a defendant who was not equally culpable with his codefendants who actually killed the victim.

The Supreme Court subsequently clarified the holding of *Enmund* in *Tison v. Arizona*, 481 U.S. 137, 107 S. Ct. 1676, 95 L. Ed. 2d 127 (1987). The Court stated:

> *Enmund* held that when "intent to kill" results in its logical though not inevitable consequence—the taking of human life—the Eighth Amendment permits the State to exact the death penalty after a careful weighing of the aggravating and mitigating circumstances. Similarly, we hold that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

481 U.S. at 157-58.

The Court concluded:

> Only a small minority of those jurisdictions imposing capital punishment for felony murder have rejected the possibility of a capital sentence absent an intent to kill, and we do not find this minority position constitutionally required. We will not attempt to precisely delineate the particular types of conduct and states of mind warranting imposition of the death penalty here. Rather, we simply hold that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement.

481 U.S. at 158.

Bjorklund argues that without a specific finding by the jury, we cannot know whether he was "death eligible," brief for appellant at 72, because he might be simply an aider and abettor for whom the death penalty, under *Enmund v. Florida, supra,* would be inapplicable. We determine that the concerns of the Court in *Enmund* are simply not present in this case. Bjorklund, in his statement to police on December 6, 1992, said, "We're both responsible. I was as responsible as he was, and he's as responsible as I am." In another statement given to police on June 5, 1993, Bjorklund stated that "whatever went on, whatever you say, I said whatever's happening it's 50/50, did I not say that. . . . So I didn't try to minimize anything. I told you the way

it was and I informed you that I felt it was 50/50." Bjorklund stated he was equally responsible. Bjorklund admitted he had a choke hold on Harms when he stumbled and fell on top of her. Dr. Matthias I. Okoye, a forensic pathologist, testified that one of the causes of Harms' death was a broken hyoid bone and strangulation. Bjorklund admitted shooting Harms five times with a .38-caliber revolver.

Additionally, we note that it is not the province of the jury to make the findings posited by Bjorklund in this assignment of error. The lack of a jury finding in this regard has no impact on sentencing because the *Enmund v. Florida, supra*, question is addressed as a mitigating circumstance during the sentencing phase of a capital case. It is, by statute, a mitigating circumstance that "[t]he offender was an accomplice in the crime committed by another person and his participation was relatively minor." § 29-2523(2)(e). The trial court found during sentencing that Bjorklund failed to establish this mitigator by a preponderance of the evidence, and we agree. For these reasons, we conclude that this assignment of error is without merit.

In his third assignment of error, Bjorklund argues that the trial judge erred in failing to recuse himself from sentencing when there was evidence of bias or prejudice and when the judge initiated and received ex parte communications. We disagree.

A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995); *State v. Richter*, 240 Neb. 913, 485 N.W.2d 201 (1992). A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *State v. Ryan*, 257 Neb. 635, 601 N.W.2d 473 (1999); *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999); *State v. Pattno*, 254 Neb. 733, 579 N.W.2d 503 (1998); *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997).

In support of his argument, Bjorklund points to a letter from the trial judge published in the jury's local newspaper thanking

them for their service, a letter addressed to the trial judge from faculty at Harms' high school, the failure of Bjorklund to be present or confront Barney at his plea proceeding, and certain other ex parte communications. Initially, we note that we have discussed in detail above the lack of error in Bjorklund's absence from Barney's plea proceeding in that Bjorklund did not have standing with regard to Barney's plea agreement and that further, there was no justiciable controversy. We decline to address the issue further here, beyond noting that Bjorklund presents no evidence or authority to suggest that a trial judge who presides over one defendant's plea proceedings is biased and prejudiced as a result and cannot preside over a codefendant's trial and sentencing. See *State v. Lotter, supra.*

The ex parte communications noted by Bjorklund involved hugs given by the trial judge to some of the jurors after the verdict was handed down and the prayer which occurred prior to the trial of the case. The record is clear that neither of these communications either were or were perceived to be comments regarding Bjorklund, the evidence, or the attorneys. We address this matter in detail in response to Bjorklund's other assignments of error.

Regarding the letter to the jury's local newspaper, the trial judge in that letter thanked the jurors for their service and stated that he could not and did not intend to comment in any way on their verdict or the evidence. As for the letter from Harms' high school which stated that it had been solicited by the trial judge, the trial judge indicated on the record that neither he nor his staff had solicited the letter. Bjorklund offered no evidence to indicate bias or prejudice on the trial judge's part and thus did not meet his heavy burden of overcoming the presumption of judicial impartiality. See, *State v. Ryan, supra*; *State v. Lotter, supra*; *Dyas v. Lockhart,* 705 F.2d 993 (8th Cir. 1983), *cert. denied* 464 U.S. 982, 104 S. Ct. 424, 78 L. Ed. 2d 359. See, also, *Dyas v. Lockhart,* 771 F.2d 1144 (8th Cir. 1985) (appeal after remand), and 878 F.2d 1105 (8th Cir. 1989) (second appeal after remand). Therefore, we conclude there is no merit to this assignment of error.

In his fourth assignment of error, Bjorklund argues that the trial court erred in failing to call a three-judge panel after

Bjorklund requested it and when there were specific and compelling reasons why a three-judge panel was required. We disagree.

Section 29-2520 provides that when a person is found guilty under § 28-303, sentencing shall be determined by the trial judge, a panel of three judges including the trial judge, or a panel of three judges excluding the trial judge. We have held that this statute grants the trial judge discretion to conduct the sentencing with or without the assistance of two additional judges and that a defendant's request for a three-judge panel does not make such a panel mandatory. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995); *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989). The trial judge elected not to request a three-judge sentencing panel based in part on the voluminous record, and we cannot say that this decision constituted an abuse of discretion. This assignment of error is without merit.

In his fifth assignment of error, Bjorklund argues that the trial court erred in failing to make specific, written factual findings on nonstatutory mitigating circumstances and in failing to enunciate which nonstatutory mitigating factors were considered. Bjorklund alleges that this failure deprived him of a rational and intelligent review of the record and findings, and violated his 8th and 14th Amendment rights and his state-created liberty interest rights. We disagree.

Section 29-2522 states:

> In each case in which the court imposes the death sentence, the determination of the court shall be in writing and shall be supported by written findings of fact based upon the records of the trial and the sentencing proceeding, and referring to the aggravating and mitigating circumstances involved in its determination.

Regarding the constitutionality of § 29-2522, we have previously stated that "[t]he Constitution does not require the sentencing judge or judges to make specific written findings with regard to nonstatutory mitigating factors." *State v. Reeves*, 234 Neb. 711, 741, 453 N.W.2d 359, 379 (1990), *judgment vacated* 498 U.S. 964, 111 S. Ct. 425, 112 L. Ed. 2d 409.

In the instant case, the trial judge clearly abided by the statutory mandates found in § 29-2522. The trial judge made written

findings of fact and set forth individually each statutory aggravating and mitigating circumstance involved in the case. The trial judge then stated that "the court has considered all nonstatutory mitigating evidence offered by defendant, including but not limited to evidence relating to the character and background of defendant, as well as the circumstances of the offense. The court has given such evidence that weight, if any, to which it is entitled."

We conclude that this is a reference sufficient to satisfy the statute, given that we have previously stated that more specific references to nonstatutory mitigating factors are not required. Therefore, this assignment of error is also without merit.

In his sixth assignment of error, Bjorklund argues that the trial court erred in failing to conduct a proper proportionality review pursuant to § 29-2521.03. This court recognizes that in *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999), there was discussion by some members of the court regarding the scope of proportionality review, but in this case, we need not revisit that issue because regardless of what kind of proportionality review is conducted, we conclude that Bjorklund would still be eligible for the death penalty. We conclude that this assignment of error is without merit because the statute cited concerns the proportionality review conducted by this court and does not involve review by the sentencing court.

In his seventh assignment of error, Bjorklund argues that the trial court erred in imposing the death penalty on Bjorklund when that penalty was more excessive than that imposed in factually similar cases, including that of his equally culpable codefendant. We disagree.

Section 29-2521.03 states that "[n]o sentence imposed shall be greater than those imposed in other cases with the same or similar circumstances." Bjorklund cites *State v. White*, 239 Neb. 554, 477 N.W.2d 24 (1991); *State v. Bird Head*, 225 Neb. 822, 408 N.W.2d 309 (1987); and *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985), *overruled on other grounds, State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), as examples of factually similar cases in which life imprisonment, rather than the death penalty, was imposed. Bjorklund also argues that his

codefendant, Barney, was equally culpable and yet received a sentence of life imprisonment.

We have, however, repeatedly held that proportionality review under § 29-2521.03 looks only to other cases in which the death penalty has been imposed. *State v. Lotter, supra*; *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996); *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990); *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986); *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

In his eighth assignment of error in this section, Bjorklund alleges that the trial court erred in not conducting a fair comparative review which is mandatory under § 29-2522(3), violating Bjorklund's Eighth Amendment and due process rights and his state-created liberty interest rights. We disagree.

In this assignment of error, Bjorklund reiterates the arguments presented in the previous assignment of error. As we stated in dismissing that assignment, "similar cases" for purposes of proportionality review means only other cases in which the death penalty is imposed. The sentencing court, like this court, could not have found that imposing the death penalty in this case would be excessive or disproportionate to the imposition of the same penalty in other cases. Accordingly, we conclude this assignment of error to be without merit.

In his ninth assignment of error, Bjorklund alleges that the court erred in allowing the presentence investigation report to be entered into evidence at sentencing. Again, we disagree.

In resolution of this assignment of error, we note that the sentencing phase is separate and apart from the trial phase and that the traditional rules of evidence may be relaxed following conviction so that the sentencing authority can receive all information pertinent to the imposition of sentence. *State v. Strohl*, 255 Neb. 918, 587 N.W.2d 675 (1999); *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995). A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence. *State v. Strohl, supra*; *State v. Ryan, supra*; § 29-2521.

This court has previously stated:

> "It is a long accepted practice in this state that before sentencing a defendant after conviction a trial judge has a broad discretion in the sourse [sic] and type of evidence he may use to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by statute. Highly relevant, if not essential, to his determination of an appropriate sentence is the gaining of knowledge concerning the defendant's life, character, and previous conduct. In gaining this information, the trial court may consider reports of probation officers, police reports, affidavits, and other information including his own observations of the defendant. A presentence investigation has nothing to do with the issue of guilt. The rules governing due process with respect to the admissibility of evidence are not the same in a presentence hearing as in a trial in which guilt or innocence is the issue."

*State v. Ritsch*, 232 Neb. 407, 408-09, 440 N.W.2d 689, 691 (1989).

While it is clear that the presentence investigation report was indeed admissible during sentencing in Bjorklund's case, we also note that the admission of the report worked solely to Bjorklund's advantage. The State requested and the trial court agreed that the report could be used to establish any statutory or nonstatutory mitigating factor, but not aggravating factors. Thus, we conclude Bjorklund's arguments in this regard to be meritless.

In his 10th assignment of error, Bjorklund alleges that the trial court erred in allowing victim impact statements which contained advocacy of the type of punishment which should be imposed to be included in the presentence investigation report. We disagree.

With regard to the admission of victim impact statements to a sentencing body, the U.S. Supreme Court has stated:

> "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family."

*Payne v. Tennessee*, 501 U.S. 808, 825, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991) (quoting *Booth v. Maryland*, 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987) (White, J., dissenting)). Thus, to the extent that victim impact statements go merely to showing the personal characteristics of the victim or the emotional impact of the crime on the family, their admission at sentencing has been expressly held not to violate the U.S. Constitution.

▊ There remains, however, one category of victim impact statements that may not be admitted at a capital sentencing even after *Payne v. Tennessee, supra. Payne* did not overrule the holding in *Booth v. Maryland, supra*, that the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment. *Payne v. Tennessee, supra*. Therefore, to the extent that such evidence was admitted at the sentencing, it should not have been.

▊ Nevertheless, the Eighth Amendment is not violated unless the sentencing body considers impermissible statements in reaching the sentencing decision. While, as *Booth v. Maryland, supra*, made clear, a jury will be assumed to have considered such impermissible statements, the presumption for judges is the opposite. As we stated in *State v. Joubert*, 235 Neb. 230, 249, 455 N.W.2d 117, 130 (1990):

> The situation is no different than that presented in a bench trial where the judge suppresses a confession, presides over the trial, and then imposes sentence. The fact that a judge reviews a confession does not disqualify him from continuing to preside over the remaining phases of the trial. This is so because it is presumed that judges disregard evidence which should not have been admitted.

▊ Unlike the three-judge panel in *State v. Joubert, supra*, the sentencing judge in this case did not explicitly state that he did not consider statements by the victim's family. Neither, however, has Bjorklund presented any evidence that the sentencing judge considered victim impact statements. In the absence of evidence to the contrary, the presumption is that a judge will disregard evidence that should not have been admit-

ted. *State v. Joubert, supra; State v. Sheridan,* 230 Neb. 979, 434 N.W.2d 338 (1989).

In our recent opinion in *State v. Ryan,* 257 Neb. 635, 601 N.W.2d 473 (1999), we determined that the sentencing judge in a capital case committed error in meeting with members of the victim's family prior to sentencing. However, the error in that case was based on the fact that the trial judge met with the family privately, in an ex parte communication. *Id.* That error is not present in the instant case, as the victim impact statements were offered into evidence as part of the presentence investigation report. Defense counsel was thus aware of the victim impact statements and had a fair opportunity to respond, so there was no improper ex parte communication with the victim's family as in *State v. Ryan, supra.*

Bjorklund's arguments with regard to this assignment of error are without merit.

In his 11th assignment of error in this section, Bjorklund argues that the trial court erred in finding that the State proved the relevant aggravating circumstances beyond a reasonable doubt and in not finding that the statutory and nonstatutory mitigating circumstances approached or exceeded the weight of the aggravating circumstances, thus violating Bjorklund's 8th and 14th Amendment rights under the U.S. Constitution. We disagree.

Aggravating circumstances must be proved beyond a reasonable doubt. *State v. Moore,* 250 Neb. 805, 553 N.W.2d 120 (1996). Bjorklund argues that the State failed to prove beyond a reasonable doubt the statutory aggravators found in § 29-2523(1)(a), (b), and (d). The crux of Bjorklund's argument is that the trial court relied solely on Bjorklund's statements to demonstrate the required proof and that uncorroborated statements are insufficient to provide that proof. It is true that a voluntary confession is insufficient, standing alone, to prove that a crime has been committed, but it is competent evidence of that fact and may, with slight corroborative circumstances, be sufficient to warrant a conviction. *State v. Hankins,* 232 Neb. 608, 441 N.W.2d 854 (1989). A de novo review of the record as well as an examination of the sentencing order in this case demonstrates that each aggravating factor was proved beyond a rea-

sonable doubt through the use of Bjorklund's own statements in conjunction with the testimony of other witnesses and the physical evidence admitted.

Section 29-2523(1)(a) provides as an aggravating circumstance that "[t]he offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity." The trial court found, and the evidence supports a finding, that this aggravating circumstance applies to Bjorklund only with regard to the "substantial history of serious assaultive or terrorizing criminal activity." § 29-2523(1)(a). The State proved beyond a reasonable doubt that from August to September 1992, Bjorklund committed three robberies in which he threatened the victims or struck them with a gun and that he aided and abetted Barney in committing two other robberies in which Barney brandished a weapon. The record amply demonstrates that the aggravating circumstance of a substantial history of terrorizing or assaultive criminal behavior is present in this case.

The version of § 29-2523(1)(b) effective at the time of Bjorklund's sentencing provided as an aggravating circumstance that "[t]he murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime." The trial court found, and the evidence supports beyond a reasonable doubt, that this aggravating circumstance is present in this case. The evidence demonstrates that when Harms was abducted by Bjorklund, Bjorklund made no attempt to conceal his identity and that when the duct tape was placed over her eyes and mouth, Harms had already clearly seen and could identify each of her abductors. In his December 6, 1992, statement to the police, Bjorklund admitted, "I said what are we gonna do and [Barney] said well she can't talk. . . . He says well, we're gonna have to do, we're gonna have to shut her up. . . . So then, I said, well where do we go . . . ." Bjorklund also stated that the duct tape was applied in such a manner that Harms could still see some of what was happening around her and that he would have been at a significant risk of being identified if Harms had not been killed. The record amply

demonstrates that the aggravating circumstance of murder to conceal one's identity is present in this case.

Section 29-2523(1)(d) provides as an aggravating circumstance that "[t]he murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence." The trial court found, and the evidence supports beyond a reasonable doubt, that this aggravating circumstance is present in this case. The evidence, which includes Bjorklund's statements, the physical evidence, and the expert testimony in this case, establishes that Harms was abducted, bound with duct tape, sexually assaulted by Bjorklund, and sexually assaulted by Barney. Harms was taken to a remote location, choked by Bjorklund, shot in the head by Barney, and left in a field to die. Bjorklund and Barney returned to retrieve a blanket, and when Bjorklund realized that Harms was not dead, he shot her several more times in the head.

The evidence also establishes that Bjorklund told a fellow inmate that he and Barney subjected Harms to sexual intercourse "in every way," that they forced her to perform oral sex on one of them while the other was having sexual intercourse with her, that they made her say "how good they were," that they forced her to do "all kinds of nasty things," that they "beat her around," and that they did "just anything to make her do what they wanted her to do."

Finally, although the trial court did not rely on the following evidence to establish the existence of this aggravating circumstance, the record also demonstrates beyond a reasonable doubt that Harms received numerous incised wounds above, below, and on her left breast as well as on her upper right arm adjacent to her right breast which were consistent with sexual sadism and torture.

In summary, we conclude that the evidence amply demonstrates a murder that was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence and thus, that the trial court properly found that aggravating circumstance.

Because we have concluded that each of the aggravating circumstances found by the trial court was established beyond a reasonable doubt and that those portions established through use

of Bjorklund's statements were also sufficiently corroborated by other evidence in this case, Bjorklund's 11th assignment of error has no merit.

In his 12th assignment of error, Bjorklund argues that the trial court erred in not finding that the statutory and nonstatutory mitigators approached or exceeded the weight of the aggravators and in so doing, violated Bjorklund's rights under the 8th and 14th Amendments to the U.S. Constitution. We disagree.

The determination of whether mitigating circumstances approach or exceed the weight of aggravating circumstances is not a numerical process, but, rather, involves the reasoned judgment of the sentencing authority. *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996). After proof of at least one aggravating circumstance, the sentencing authority under Nebraska's capital sentencing scheme is granted the discretion to determine the weight to be given to aggravating and mitigating circumstances and make a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of circumstances present. *State v. Moore, supra.*

The trial court found and considered as a mitigating circumstance that Bjorklund's capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law was impaired as a result of mental illness, mental defect, or intoxication. The trial court also considered nonstatutory mitigating factors in its determination of Bjorklund's sentences.

Based upon our de novo review of the aggravating and mitigating circumstances in this case, we determine that the aggravating circumstances proven to exist far outweigh the mitigating circumstances and that therefore the imposition of the death penalty in this case is appropriate. Accordingly, Bjorklund's 12th assignment of error is without merit.

In his 13th assignment of error, Bjorklund alleges that death by electrocution constitutes cruel and unusual punishment. We have previously held that the death penalty by electrocution as punishment for crime is not cruel and unusual punishment within the meaning of the U.S. or Nebraska Constitutions. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766

■■■■■■■■

(1995). We reaffirm our holding in *State v. Ryan, supra,* and conclude this assignment of error to be without merit.

■■■ Bjorklund contends in his 14th assignment of error that § 29-2520 lacks appropriate standards for impaneling a three-judge panel. We have previously addressed this very issue in *State v. Ryan,* 233 Neb. 74, 444 N.W.2d 610 (1989), and *State v. Reeves,* 234 Neb. 711, 453 N.W.2d 359 (1990), *judgment vacated* 498 U.S. 964, 111 S. Ct. 425, 112 L. Ed. 2d 409. We reaffirm the holdings in *State v. Ryan, supra,* and *State v. Reeves, supra,* wherein we held that the sentencing procedure provided by § 29-2520 provides appropriate standards for impaneling a three-judge panel. Bjorklund's contention is, therefore, without merit.

■■■ In his 15th assignment of error, Bjorklund argues that § 29-2520 is unconstitutional because a defendant is denied the right to have a jury determine death eligibility. Jury sentencing in a capital case is not, however, required under either the U.S. or Nebraska Constitutions. *Proffitt v. Florida,* 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913 (1976); *State v. Ryan, supra; State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706 (1986). We reaffirm these previous decisions and thus conclude this assignment of error to be without merit.

Bjorklund proposes in his 16th assignment of error that § 29-2521 fails to give defendants adequate notice of aggravating circumstances. Bjorklund is essentially arguing that he was denied adequate notice as to nonstatutory aggravating circumstances. However, in the instant case, the State did not attempt to prove, nor did the trial judge find, nonstatutory aggravating factors. Instead, the State specifically identified aggravating circumstances as provided in § 29-2523(1)(a), (b), and (d).

■■■ As we previously stated in *State v. Reeves, supra,* the State is not constitutionally required to provide the defendant with such notice. Notice was, however, afforded in this case. This assignment of error is without merit.

In Bjorklund's 17th assignment of error, he contends that §§ 29-2521 through 29-2524 are unconstitutional because a sentencing panel is not required to enunciate which nonstatutory mitigating factors were considered and found to exist. We reject

Bjorklund's argument in recognition of our previous holding in *State v. Reeves, supra.*

Bjorklund contends in his 18th assignment of error that § 29-2522 provides insufficient guidance as to the manner in which the sentencer should weigh aggravating and mitigating circumstances. As we held in *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *disapproved on other grounds, State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990), the argument that the sentencing judge is given too much discretion under the Nebraska scheme has been foreclosed by the U.S. Supreme Court. See *Proffitt v. Florida, supra.* Therefore, this assignment of error is without merit.

Bjorklund's 19th, 20th, and 21st assignments of error pertain to the appropriateness of Nebraska's proportionality review guidelines. We have previously addressed these issues and reaffirm our holdings in *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986), and *State v. Palmer, supra.* These assignments of error are without merit.

█ In his 22d assignment of error, Bjorklund challenges the manner in which § 29-2523(1) utilizes the terms "substantial history" found in subsection (a); "apparent effort" found in subsection (b); and "especially heinous, atrocious, cruel" found in subsection (d). We have consistently held that Nebraska's death penalty statutes, which include § 29-2523(1), are neither vague nor overbroad. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999), citing *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980), and *State v. Simants, supra.*

We have also previously analyzed the specific terms Bjorklund challenges. In *State v. Rust*, 197 Neb. 528, 535, 250 N.W.2d 867, 872-73 (1977), we determined that the aggravating circumstance found in § 29-2523(1)(a) applied where the defendant had a prior conviction for assault with intent to inflict great bodily harm, and we stated that "[w]e interpret '*substantial history* of serious assaultive or terrorizing criminal activity' to refer to events and incidents prior to and not part of the events out of which the current charge arises. The use of the term 'history' clearly implies earlier events." (Emphasis in original.)

In *State v. Holtan*, 197 Neb. 544, 250 N.W.2d 876 (1977), *disapproved on other grounds, State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), we found the existence of circumstance (1)(a) of § 29-2523, where the defendant had convictions for armed robbery and first-degree assault and three convictions for bank robbery. We stated in *State v. Holtan*, 197 Neb. at 546, 250 N.W.2d at 879:

> The words "serious," "assaultive," and "terrorizing" are words in common usage with meanings well-fixed and generally clearly understood. The term "substantial history" is likewise reasonably clear. "History" refers to the individual's past acts preceding the incident for which he is on trial and "substantial," as here used, refers to an actual, material, and important history of acts of terror of a criminal nature. It does not refer to the particular incident involving the homicide for which he is subject to sentence.

In *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989), we considered whether this court's interpretation and application of § 29-2523(1)(a) are unconstitutionally vague or overbroad under *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972). Under the rationale of *Furman v. Georgia, supra*, statutory aggravating circumstances must be clearly defined and applied by a court so as to prevent a sentencing body from exercising discretion that may lead to arbitrary or inconsistent results. We concluded in *State v. Ryan, supra*, that the *Furman* standard is met by our interpretation and application of § 29-2523(1)(a) and that it is, therefore, not unconstitutionally vague or overbroad.

In *State v. Reeves*, 234 Neb. 711, 754, 453 N.W.2d 359, 386 (1990), *judgment vacated* 498 U.S. 964, 111 S. Ct. 425, 112 L. Ed. 2d 409, we held that the term "apparent" as used in § 29-2523(1)(b) means " 'readily perceptible' " and therefore that the provision cannot be applied in speculative situations or where a strained construction is necessary to fulfill it. In *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified* 255 Neb. 889, 587 N.W.2d 673 (1999), we broke down the phrase "readily perceptible" in an effort to further define the term "apparent." We determined that "readily perceptible" means " 'capable of being easily noted' " or " 'capable of being noted

without trouble.' " *Id.* at 521, 586 N.W.2d at 635. We concluded that for a "sentencing panel to conclude that [the defendant] murdered [the victims] in an ' " 'apparent effort to conceal the commission of a crime,' " ' it must have been obvious to the panel that that was [the defendant's] purpose. If it were not obvious, it would not have been 'easily capable of being noticed.' " *Id.* at 521-22, 586 N.W.2d at 635.

In *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996), we determined that § 29-2523(1)(b) is not overbroad.

In *State v. Rust*, 197 Neb. 528, 538-39, 250 N.W.2d 867, 874 (1977), we analyzed the "especially heinous, atrocious, cruel" language and adopted the following statement made by the sentencing panel:

> "We recognize that all first degree murder crimes are capable of being accurately characterized by one or more of the descriptive adjectives employed [in § 29-2523(1)(d)], but by the use of the [word] 'especially' . . . the legislature has required a much greater degree of these characteristics than is usually present in a murder. This category of aggravating circumstances would include murders involving torture, sadism, sexual abuse, or the imposition of extreme suffering."

We have further held that an "especially heinous, atrocious, cruel" murder includes a " 'pitiless crime which is unnecessarily torturous to the victim' and to cases where torture, sadism, or the imposition of extreme suffering exists," *State v. Moore*, 210 Neb. 457, 470, 316 N.W.2d 33, 41 (1982), *habeas corpus granted on other grounds, Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), or where the murder was preceded by acts "performed for the satisfaction of inflicting either mental or physical pain or that pain existed for any prolonged period of time," *State v. Hunt*, 220 Neb. 707, 725, 371 N.W.2d 708, 721 (1985), *disapproved on other grounds, State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

We conclude, as we did in *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989), that this court has adopted a limiting construction on the aggravating circumstance of § 29-2523(1)(d), and further affirm our holding in *State v. Ryan, supra*, that this limiting construction comports with U.S. Constitutional require-

ments and thus, the language in subsection (1)(d) is not vague or overbroad. See, also, *Harper v. Grammer*, 895 F.2d 473 (8th Cir. 1990).

 This court has previously analyzed the terms "substantial history"; "apparent effort"; and "especially heinous, atrocious, cruel," as used in § 29-2523(1)(a), (b), and (d), and after reviewing our past analysis, we hold that these terms as utilized are neither vague nor overbroad. Accordingly, Bjorklund's assignment of error in this section is without merit.

Finally, in his 23d assignment of error, Bjorklund contends that Nebraska's death penalty statutes are not sufficiently principled, have not been consistently followed and enforced by the courts, and are unconstitutionally vague and overbroad. We hold that such an argument has sufficiently been addressed above and decline to address it further here. Accordingly, Bjorklund's last assignment of error in this section is also without merit.

## 10. Ex Parte Communications Between Judge and Jury

### (a) Assignments of Error

Bjorklund next alleges in multiple assignments of error that the trial court erred in conducting what he characterizes as ex parte judicial prayer sessions with the jury and that the trial judge reviewing Bjorklund's second motion for new trial filed on those grounds erred in overruling the motion. Specifically, Bjorklund alleges:

(1) The reviewing judge erred in failing to find that the ex parte contact constituted a violation of Bjorklund's rights to freedom of religion and freedom from excessive entanglement of religion with the state as guaranteed by the 1st and 14th Amendments to the U.S. Constitution and article I, § 4, of the Nebraska Constitution and that this violation is not subject to harmless error analysis.

(2) The reviewing judge erred in failing to find that the ex parte contact violated Bjorklund's right to be present as guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution, and by article I, § 11, of the Nebraska Constitution, and by Neb. Rev. Stat. § 29-2001 (Reissue 1995) and that this violation is not subject to harmless error analysis

under the authority of *Strasheim v. State*, 138 Neb. 651, 294 N.W. 433 (1940).

(3) The reviewing judge erred in failing to find that the ex parte contact violated Bjorklund's right to counsel as guaranteed by the 6th and 14th Amendments to the U.S. Constitution and by article I, § 11, of the Nebraska Constitution and that this violation is not subject to harmless error analysis.

(4) The reviewing judge erred in failing to find that the ex parte contact violated Bjorklund's right to be free from conviction except upon proof of guilt beyond a reasonable doubt as guaranteed by the due process provisions of the 5th and 14th Amendments to the U.S. Constitution and article I, § 3, of the Nebraska Constitution and that this violation cannot be subject to harmless error analysis.

(5) The reviewing judge erred in failing to find that the ex parte contact violated Bjorklund's rights to a fundamentally fair trial by an impartial jury and to due process of law as guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution and by article I, §§ 3 and 6, of the Nebraska Constitution and that this violation is not subject to harmless error analysis.

(6) The reviewing judge erred in failing to find that the ex parte contact was a structural error within the meaning of *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), and therefore not subject to harmless error analysis.

(7) The reviewing judge erred in failing to find that the constitutional rights violated by the ex parte communication are so basic to a fair trial that their violation can never be considered harmless.

(8) The reviewing judge erred in applying the presumption-of-prejudice test to the ex parte contact because the contact violated rights guaranteed to Bjorklund by the 1st, 5th, 6th, and 14th Amendments to the U.S. Constitution and by article I, §§ 3, 4, 6, and 11, of the Nebraska Constitution.

(9) The reviewing judge erred in admitting juror testimony, over Bjorklund's objections, concerning the effect of the trial court's ex parte contact on the jurors' thoughts, minds, and mental processes.

(10) The reviewing judge erred in finding that the presumption of prejudice created by the ex parte contact was rebutted by the State with proof beyond a reasonable doubt that the constitutional error was harmless.

### (b) Standard of Review

■ A motion for new trial based on newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. McCormick and Hall*, 246 Neb. 271, 518 N.W.2d 133 (1994).

■ In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996); *State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). Even a constitutional error which was harmless beyond a reasonable doubt does not warrant the reversal of a criminal conviction. *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997); *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996).

### (c) Analysis

#### *(i) Freedom of Religion*

In his first assignment of error in this section, Bjorklund argues that the ex parte contact which occurred between the trial judge and the regular and alternate jurors violated Bjorklund's rights to freedom of religion and freedom from excessive entanglement of religion with the State under the Establishment Clause of the First Amendment to the U.S. Constitution and the religious freedom clause of the Nebraska Constitution and that this error is not subject to harmless error analysis. We disagree.

In *Valley Forge College v. Americans United*, 454 U.S. 464, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982), the petitioner sued for declaratory and injunctive relief against the transfer of government property to a religious organization without payment. The property was part of an Army hospital, and under a plan to

reduce the number of military installations, the Secretary of Defense proposed to close the hospital and the General Services Administration declared it to be " 'surplus property.' " 454 U.S. at 468. The government eventually conveyed the 77-acre tract of land to Valley Forge Christian College, a nonprofit educational institution operating under a religious order known as the Assemblies of God, and the deed required the college to use the property for 30 years solely for systematic training on the collegiate level of men and women for Christian services either as ministers or laymen. The respondents described themselves as a nonprofit organization composed of 90,000 taxpayer members and claimed that each member would be deprived of the fair use of his or her tax dollar. The U.S. Supreme Court stated:

> Although respondents claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms. It is evident that respondents are firmly committed to the constitutional principle of separation of church and State, but standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy. "[T]hat concrete adverseness which sharpens the presentation of issues," *Baker v. Carr*, 369 U.S., at 204, is the anticipated consequence of proceedings commenced by one who has been injured in fact; it is not a permissible substitute for the showing of injury itself.

(Emphasis omitted.) 454 U.S. at 485-86.

We do not agree that the ex parte communication infringed on Bjorklund's religious rights. Bjorklund's rights to freedom of religion and to worship as he pleases did not suffer in any way due to the trial court's ex parte contact with the jury, and Bjorklund does not claim to have suffered such effect.

Therefore, we determine that Bjorklund failed to identify any personal injury suffered by him as a consequence to the ex parte contact, and we therefore conclude that Bjorklund does not have

standing to raise a claim under the Establishment Clause, and this assignment of error is without merit.

We are aware that the U.S. Court of Appeals for the Fourth Circuit has addressed an issue somewhat similar to this case in *North Carolina Civil Liberties v. Constangy*, 947 F.2d 1145 (4th Cir. 1991), and found that the judge's conduct in that instance violated the three-part test for separation of church and state set forth by the U.S. Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971). In that case, the judge engaged in a lengthy prayer from the bench at the beginning of court each day. The Fourth Circuit found that the judge's actions served a wholly religious purpose, that the content of the prayer clearly conveyed a message of endorsement of religion, and that to start each day with a prayer injected religion into the judicial process in such a manner as to destroy the appearance of neutrality.

We conclude that *North Carolina Civil Liberties v. Constangy, supra*, does not apply to the instant case. In that case, the plaintiffs were several of the attorneys who were required to be present during the judge's prayers. *Id.* The standing question was squarely presented because the lawyers involved were subject to the judge's religious activity. However, in the instant case, Bjorklund was not subject to the judge's ex parte contact, and therefore, he lacked standing to raise a freedom of religion claim. We find, pursuant to *Valley Forge College v. Americans United*, 454 U.S. 464, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982), that Bjorklund lacks standing to raise a freedom of religion claim in the instant case. Thus, we do not reach the question of whether the judge's actions violated the holding of *Lemon v. Kurtzman, supra*.

Bjorklund also argues that this ex parte communication violated his rights under the religious freedom clause of the Nebraska Constitution. This provision specifically protects an individual's right to worship according to his or her own conscience and prevents government from compelling worship against an individual's consent. Neb. Const. art. I, § 4. For the reasons discussed above, we also conclude that Bjorklund's rights under this provision were not violated.

Because we conclude that Bjorklund does not have standing to raise an Establishment Clause claim, we decline to address Bjorklund's argument that violations of the Establishment Clause are not subject to harmless error analysis.

### (ii) Right to be Present and Right to Counsel

In his second assignment of error, Bjorklund argues that the ex parte communication violated his right to be present as guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution, by article I, § 11, of the Nebraska Constitution, and by § 29-2001 and that this violation is not subject to harmless error analysis under the authority of *Strasheim v. State*, 138 Neb. 651, 294 N.W. 433 (1940).

In his third assignment of error, Bjorklund argues that the ex parte communication violated his right to counsel as guaranteed by the 6th and 14th Amendments to the U.S. Constitution and by article I, § 11, of the Nebraska Constitution and that this violation is not subject to harmless error analysis for the reason that deprivation of the right to counsel during a critical stage of a criminal prosecution which pervades the entire proceeding can never be considered harmless. Because we determine that the same analysis disposes of both of these assignments of error, we will address them together.

Bjorklund argues that both he and his attorney had a right to be present during the ex parte communications between the trial judge and the jury. Bjorklund is correct, and it was error to conduct this communication without the presence of Bjorklund and his counsel.

A violation of the right to be present in the context of ex parte communications is subject to a harmless error analysis as set forth in *Rushen v. Spain*, 464 U.S. 114, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983). In *Rushen*, a prospective juror stated that she had no personal knowledge of violent crimes and did not associate the Black Panther Party with any form of violence. At trial, evidence was adduced about an unrelated murder by a member of the Black Panther Party, and this triggered the juror's memory that in the unrelated murder the victim had been the juror's childhood friend. The juror went to the trial judge's chambers to tell him of this. No record was made of this contact, and the trial judge did not inform the attorneys of this contact. The U.S.

Supreme Court upheld the lower court's finding that the unreported ex parte contact between the trial judge and the juror was erroneous, but reversed the lower court's finding that it could never be harmless error. The Supreme Court determined that the communication and its effect on juror impartiality are questions of historical fact and entitled to a presumption of correctness in the absence of " 'convincing evidence' " to the contrary. 464 U.S. at 120. The Supreme Court went on to determine that the contact in this case was harmless error beyond a reasonable doubt. *Id.*

Bjorklund argues that the case *Strasheim v. State*, 138 Neb. 651, 294 N.W. 433 (1940), precludes harmless error analysis of the state constitutional violations alleged in these assignments of error. In *Strasheim*, the judge engaged in a prolonged discourse with jurors who had reported to the courtroom during their deliberations and without the defendant or counsel present. This court found that the defendant had a right to be present and to have his counsel present and that it was the trial court's duty not to resume the proceedings of the trial in their absence. *Id.* In finding that the error was not harmless and remanding the cause, we stated that "[o]ur task is to determine whether or not a fair trial has been had and whether or not prejudicial error has been committed. It [is] manifest that a substantial invasion of defendant's rights has occurred, and that prejudicial error was committed . . . ." 138 Neb. at 656, 294 N.W. at 436.

However, contrary to Bjorklund's position, *Strasheim* undoubtedly stands for the proposition that such errors are subject to harmless error analysis, a result that has been affirmed in our more recent decisions. See, *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998); *State v. Mahlin*, 236 Neb. 818, 464 N.W.2d 312 (1991). Thus, we determine that any violation of Bjorklund's right to counsel or presence at the ex parte communication is properly subject to harmless error analysis. The merits of the harmless error analysis performed by the reviewing court in this case will be discussed below.

### (iii) Deficient Suggestions as to Burden of Proof

In his fourth assignment of error in this section, Bjorklund argues that the ex parte communication violated his right to be free from conviction except upon proof of guilt beyond a rea-

sonable doubt as guaranteed by the due process provisions of the 5th and 14th Amendments to the U.S. Constitution and article I, § 3, of the Nebraska Constitution and that this violation cannot be subject to harmless error analysis. Specifically, Bjorklund argues that the trial judge suggested through the ex parte communication that the jury could use God's help in reaching their decision and that this suggestion was a "preliminary instruction" violative of due process. We disagree that the ex parte communication constituted any sort of suggestion or preliminary instruction on the burden of proof.

Although neither this court nor the U.S. Supreme Court has dealt with this issue in the context of a similar fact situation, we find particularly persuasive in the disposition of this assignment of error the opinion of the Fifth Circuit in *U.S. v. Ornelas-Rodriguez*, 12 F.3d 1339 (5th Cir. 1994). During voir dire, the trial court in that case told the jury, "'you can go to church on Friday and Sunday of Easter Holy Week and pray that you made all the right decisions . . . .'" *Id.* at 1348. The defendant argued that this statement affected the jury's consideration of the burden of proof because the invitation to pray suggested that the jury could rely on a standard of judgment outside of the formal instructions given. The Fifth Circuit stated:

> Any error which may have occurred as a result of this casual remark was cured by the passage of time [11 days passed between the statement and the submission of the case to the jury] and the trial court's detailed instruction on the presumption of innocence and the burden of proof. There is no evidence that the statement in question deprived [the defendant] of a fair trial.

*Id.* at 1349.

In the instant case, more than 25 days after the ex parte communication occurred, the trial judge instructed the jury fully on the appropriate burden of proof to be met and that they could not consider anything outside the evidence presented in reaching their verdicts. The jurors at the hearing on the second motion for new trial clearly testified that they did not view the ex parte communication as a comment on the evidence or on Bjorklund's guilt or innocence. The record is clear that the communication which occurred between the trial judge and the jurors could not

and did not constitute any kind of additional instruction on the burden of proof.

We recognize that the U.S. Supreme Court has stated that a constitutionally deficient reasonable doubt instruction requires automatic reversal. *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). Thus, Bjorklund is correct in arguing that a constitutionally deficient reasonable doubt instruction could not be subject to harmless error analysis. However, because we determine that the ex parte communication in this instance did not constitute such an instruction, we conclude this assignment of error to be without merit. See, also, *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

### (iv) Impartial Jury

In his fifth assignment of error, Bjorklund alleges that the ex parte communication violated his right to a fundamentally fair trial by an impartial jury and to due process of law as guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution and by article I, §§ 3 and 6, of the Nebraska Constitution and that this violation is not subject to harmless error analysis. We disagree.

The U.S. Supreme Court addressed this issue in *Turner v. Louisiana*, 379 U.S. 466, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965), and in *Parker v. Gladden*, 385 U.S. 363, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1966). In *Turner*, the Court overturned a jury's verdict where the jurors were chaperoned by two deputy sheriffs who were also key witnesses in the case. The Court found that the defendant's right to a fundamentally fair trial by an impartial jury was violated because the deputies' dual roles enhanced their credibility and increased the likelihood of outside discussion. *Turner v. Louisiana, supra.* The Court found that extreme prejudice was inherent in the continual association between key witnesses and the jurors throughout the trial; however, the Court distinguished between its situation and ones such as that presented by Bjorklund when it said that in *Turner*, it dealt not with a brief encounter but with a continuous and intimate association throughout a 3-day trial. *Id.*

In *Parker v. Gladden, supra,* the bailiff told one juror during the trial that the defendant was guilty and told another juror that any errors made by the jurors in convicting the defendant would be corrected by the Supreme Court. In overturning the verdict, the Supreme Court found that such statements were private talk tending to reach the jury by outside influence and that the unauthorized conduct of the bailiff involved such a probability that prejudice could result that it was deemed inherently lacking in due process. *Id.*

This court has also addressed this issue. In *Simants v. State,* 202 Neb. 828, 277 N.W.2d 217 (1979), this court found that three contacts between the jurors and the sheriff who was also a key witness in the case implicated the defendant's rights to a fair trial before a fair and impartial jury and to due process of law. *Id.* In that instance, we determined that the contact must be evaluated on a harmless error basis and that, in that instance, the State had not overcome its burden of proving harmlessness beyond a reasonable doubt. *Id.*

Here, while it is clear that a violation of a defendant's right to a fundamentally fair trial by an impartial jury in conjunction with due process of law must be evaluated on a harmless error basis according to both the U.S. Supreme Court and the Nebraska Supreme Court, we conclude that no such violation took place. The contact which occurred between the trial judge and the jurors was not of the nature implicated in the cases discussed above. The trial judge made no comment on the evidence, the law, or the defendant, and, as noted in the reviewing judge's findings, the jurors did not interpret his words as such. The phrase "God be with us" did not enhance the credibility of any witness, serve as an instruction on reasonable doubt, or in any way suggest to the jurors what an appropriate verdict would be in this case. Therefore, we conclude this assignment of error to be without merit.

### (v) Structural Error

In his sixth assignment of error, Bjorklund argues that the ex parte contact was a structural error within the meaning of *Arizona v. Fulminante,* 499 U.S. 279, 111 S. Ct. 1246, 113 L.

Ed. 2d 302 (1991), and therefore was not subject to harmless error analysis. We disagree.

In *Arizona v. Fulminante, supra,* the U.S. Supreme Court defined structural errors as those so "affecting the framework within which the trial proceeds," 499 U.S. at 310, that they demand automatic reversal and defined trial errors as those "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt," 499 U.S. at 307-08. The Supreme Court limited structural errors to a few very specific categories—total deprivation of counsel, trial before a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, denial of the right to self-representation at trial, and denial of the right to a public trial. *Id.*

The Court also listed a multitude of errors, many of constitutional magnitude, which were properly termed trial errors and subject to harmless error review. Among those listed were the denial of counsel at a preliminary hearing, the admission of a defendant's coerced statement, and a jury instruction containing an erroneous conclusive presumption. *Id.* In noting that harmless error analysis was appropriate to evaluating many constitutional violations, the Court stated:

> [We] have been faithful to the belief that the harmless-error doctrine is essential to preserve the "principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error."

*Arizona v. Fulminante,* 499 U.S. at 308.

In *Neder v. United States,* 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), Neder was convicted of filing false federal income tax returns and of federal mail fraud, wire fraud, and bank fraud. The trial court instructed the jury that to commit the tax offense, it need not consider the materiality of any false statements even though that language is used in the indictment. The trial court gave a similar instruction on bank fraud. The

Supreme Court accepted certiorari on whether and under what circumstances the omission of an element from the trial judge's charge to the jury can be harmless error. The Supreme Court recognized that most constitutional errors may be harmless, citing *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). The Supreme Court held that Neder received a fair trial and that although the trial court committed error in failing to instruct the jury on the element of materiality, that error did not render Neder's trial fundamentally unfair.

We conclude that the ex parte contact which occurred in this case was error, but did not so vitiate all the jury's factual findings as to require automatic reversal. Instead, we conclude that any error which may have occurred is trial error within the meaning of *Neder v. U.S., supra,* and *Arizona v. Fulminante, supra,* and not structural error. See *Rushen v. Spain,* 464 U.S. 114, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983). Therefore, we determine this assignment of error to be without merit.

### (vi) Basic to Fair Trial and
### Presumption of Prejudice Test Does Not Apply

In his seventh and eighth assignments of error in this section, Bjorklund argues that the constitutional rights violated by the ex parte contact are so basic to a fair trial that their violation can never be considered harmless and that the reviewing judge erred in applying the presumption of prejudice test to the ex parte contact because the contact so violated rights guaranteed to Bjorklund by the 1st, 5th, 6th, and 14th Amendments to the U.S. Constitution and by article I, §§ 3, 4, 6, and 11, of the Nebraska Constitution. We determine these assignments of error to be duplicative of those discussed above and conclude that the analysis employed above leads to the conclusion that these assignments of error are without merit.

### (vii) Admission of Juror Testimony

In his ninth assignment of error, Bjorklund argues that Judge Merritt erred in admitting testimony over objection concerning the effect of the trial court's ex parte contact on the juror's thoughts, minds, and mental processes. We disagree.

To support his argument, Bjorklund states that the testimony presented at the evidentiary hearing held before Judge Merritt violated Neb. Evid. R. 606(2), Neb. Rev. Stat. § 27-606(2) (Reissue 1995). Section 27-606(2) states:

> Upon an inquiry into the validity of a verdict . . . a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

Section 27-606(2) thus provides two exceptions to the general prohibition against juror testimony regarding any effect on their mental state. A juror may testify regarding (1) whether extraneous prejudicial information was brought to the jury's attention or (2) whether any outside influence was improperly brought to bear upon any juror. See *id.* Consequently, we must determine whether the testimony in the instant case falls within the scope of either of those exceptions.

Juror testimony may be admitted if it regards whether any outside influence was brought to bear upon any juror such that they were incapable of rendering a fair and impartial verdict. See, e.g., *State v. Menuey,* 239 Neb. 513, 476 N.W.2d 846 (1991); *State v. LeBron,* 217 Neb. 452, 349 N.W.2d 918 (1984); *State v. Robinson,* 198 Neb. 785, 255 N.W.2d 835 (1977).

In *State v. Menuey, supra,* this court faced a situation in which an alternate juror was mistakenly present in the jury room during some of the jury's deliberations. The trial court received testimony from the jurors that the presence of the alternate juror had not influenced the deliberations. This court stated:

> Neb. Rev. Stat. § 27-606(2) (Reissue 1989) provides that a juror may not be questioned about any "matter or statement occurring during the course of the jury's delibera-

tions," but may testify regarding whether any "outside influence was improperly brought to bear upon any juror." In *State v. Roberts*, 227 Neb. 489, 493, 418 N.W.2d 246, 249 (1988), we held that § 27-606(2) "controls inquiries into the validity of a verdict reached by a jury." The trial judge in *State v. LeBron*, 217 Neb. 452, 349 N.W.2d 918 (1984), upon discovering [that two jurors overheard a conversation between the judge and his law clerk discussing the case,] examined the jurors to determine whether they were nonetheless capable of rendering a fair and impartial verdict and, in refusing to declare a mistrial, concluded that there was no prejudice to LeBron. We affirmed. . . .

We thus conclude that the evidence concerning the effect of the discharged juror's unauthorized presence was properly received.

*Menuey*, 239 Neb. at 524, 476 N.W.2d at 853-54.

Similarly, in the instant case, the jurors testified regarding what was said and done during the ex parte contact and their subsequent capability, at the time of the ex parte contact, to act as fair and impartial jurors. The State pointedly instructed the jurors not to disclose, while testifying, any information regarding their thought processes, statements, or emotions during their deliberations. The jurors' testimony simply established that the trial judge's ex parte contact was not, on its face or in effect, an outside influence, brought to bear on them, which prevented them from exercising their function fairly and impartially.

The jurors' testimony regarding the ex parte conduct was correctly focused on whether the trial judge's contact with them served as an outside influence brought to bear on the jury. This testimony was necessary to determine if the jury was able to act fairly and impartially and was within the limitations of Neb. Evid. R. 602(2), Neb. Rev. Stat. § 27-602(2) (Reissue 1995). Bjorklund's assignment of error is without merit.

### (viii) Rebuttal of Presumption of Prejudice

In his 10th assignment of error, Bjorklund argues that the reviewing judge erred in finding that the presumption of prejudice created by the ex parte contact was rebutted by the State

with proof beyond a reasonable doubt that the constitutional error was harmless. We disagree.

As the reviewing judge correctly noted in his order, it is " 'only a prejudicial error, that is, an error which cannot be said to have been harmless beyond a reasonable doubt, which requires that a conviction be set aside.' " See *State v. Menuey*, 239 Neb. 513, 476 N.W.2d 846 (1991). As we have previously stated, reversal is not required if the record affirmatively shows the ex parte communication had no tendency to influence the verdict. *State v. Mahlin*, 236 Neb. 818, 464 N.W.2d 312 (1991); *State v. White*, 191 Neb. 772, 217 N.W.2d 916 (1974).

In this case, as the reviewing judge found:

> The prayers were very short in nature and were not interpreted by the jurors as being comments by Judge Endacott on the evidence to be presented in the case or on how the case should be decided. From the time the twelve jurors were selected and sworn up to the time the case was submitted to the jurors for their deliberation, Judge Endacott continued to remind the jurors of their duty to keep open minds and base their verdict only on the evidence presented.

As noted above, every juror testified that at the time of the communication, they did not believe that the trial judge was commenting on the evidence or trying to influence their verdict. The ex parte contact occurred over 25 days prior to the submission of the case to the jury; the trial judge fully and properly instructed the jury on the burden of proof and on the fact that the jurors "must not construe any statements, actions, or rulings of the court in the trial of this case . . . as reflecting an opinion of the court as to how this case should be decided"; and the trial judge consistently reminded them throughout the trial to keep an open mind and to base their verdicts solely on the evidence produced. The record affirmatively demonstrates that the communication had no tendency to affect the verdict and that the State rebutted the presumption of prejudice with proof beyond a reasonable doubt that the error that did occur was harmless. Thus, we conclude this assignment of error to be without merit.

Additionally, we note that Judge Merritt did not err in overruling Bjorklund's second motion for new trial. A motion for

new trial based on newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. McCormick and Hall*, 246 Neb. 271, 518 N.W.2d 133 (1994). We conclude that any error committed by the trial judge in engaging in this ex parte contact with the jury was harmless beyond a reasonable doubt. Bjorklund, in his statement to Sorensen, admitted that he and Barney were carrying out their fantasy of raping a woman, that they abducted Harms, that they each raped her, that Bjorklund then choked her, and that he then fired five rounds from a .38-caliber revolver into her head. We also conclude that the reviewing judge did not abuse his discretion in refusing to grant Bjorklund a new trial on the basis of that ex parte contact.

Despite our conclusion that any error regarding the ex parte communication in this case was harmless, ex parte communications should be avoided except in unusual circumstances where communication is essential and counsel cannot be reached. In such cases, a verbatim record should be made and counsel and the defendant advised on the record of the contact as soon as practical after it occurs.

## 11. CUMULATIVE ERROR

### (a) Assignments of Error

Bjorklund alleges that the following, taken cumulatively, result in a level of error that necessitates the reversal of his convictions or vacation of the sentence of death imposed:

(1) The trial judge erred in overstepping his bounds and transcending his role as a neutral and detached overseer, and the trial judge violated Bjorklund's right to a fair trial.

(2) The trial court erred in conducting ex parte judicial prayer sessions with the jury.

(3) The trial court erred in failing to inquire into the alleged conflict of interest in representation.

(4) The trial court erred in acting as a fact finder.

(5) The trial court erred in making erroneous rulings on evidentiary issues.

(6) The trial court erred in the manner that the trial and sentencing were conducted such that Bjorklund's rights under the

4th, 5th, 6th, 8th, and 14th Amendments to the U.S. Constitution and the equal protection provisions of the Nebraska Constitution and his state-created liberty interest rights were violated.

(7) The trial judge erred in failing to recuse himself because the multitude of sentencing errors he committed created a reasonable inference that he could not be impartial in determining the sentence to be imposed.

(8) The trial court erred in failing to find that the cumulative effect of all the errors deprived Bjorklund of a fair trial.

(9) Bjorklund was denied all his applicable constitutional rights.

(b) Analysis

We note at the outset that regarding assignments of error numbered 1 through 3 and 5 through 9, Bjorklund has failed to make any specific argument. In several of these assignments of error, Bjorklund has set forth generic examples of the errors claimed without any discussion or direction to this court as to what exactly the error was which he alleged had occurred. As to other assignments of error, there is no discussion at all. Several of these assignments of error are exactly the same as those fully addressed above. We have repeatedly held that absent plain error, assignments of error not discussed in the briefs will not be addressed by this court. *State v. Thieszen*, 252 Neb. 208, 560 N.W.2d 800 (1997); *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996). This rule has particular applicability in this section of Bjorklund's appeal, and we decline to address these assignments of error further.

That said, there remains one assignment of error in this section that Bjorklund did discuss, which is his allegation that the trial court erred in acting as a fact finder. Bjorklund argues specifically that the trial court acted as a fact finder by asking what he calls "clarifying questions" of witnesses throughout the trial. We disagree.

Nebraska's rules of evidence provide that "[t]he judge may interrogate witnesses, whether called by himself or by a party." Neb. Evid. R. 614(2), Neb. Rev. Stat. § 27-614(2) (Reissue 1995). We held in *State v. Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982), that the trial judge should use this right sparingly, and we conclude that the trial judge quite carefully

limited his questions to points of clarification in a few instances throughout the course of this lengthy trial. The trial judge acted appropriately with regard to the questions he asked of witnesses in this case, and we conclude that Bjorklund's last assignment of error is without merit.

## V. CONCLUSION

Having carefully reviewed all assignments of error raised by Bjorklund's counsel and by Bjorklund in his pro se briefs and pleadings, we dismiss the appeal in case No. S-94-856 and affirm the judgments of conviction and sentences in case No. S-94-994.

APPEAL IN NO. S-94-856 DISMISSED.
JUDGMENT IN NO. S-94-994 AFFIRMED.

HENDRY, C.J., and WRIGHT, J., not participating.